[No. 658-41386-1.   Division One—Panel 2.   June 14, 1971.]

SEATTLE INVESTMENT COMPANY, INC., *Respondent,* v. BYRON KILBURN *et al., Appellants.*

*Horswill, Keller, Rohrback, Waldo & Moren* and *J. Anthony Hoare,* for appellants.

*Maslan & Hanan* and *Robert G. Maslan,* for respondent.

FARRIS, A.C.J.—On August 8, 1967, Seattle Investment Company, Inc. entered into an exclusive listing agreement with the Kilburns wherein Seattle Investment Company

was granted the exclusive right and authority to sell a tavern owned by the Kilburns for a period of 90 days. The sale price was $65,000. In no event was the commission to be less than 10 per cent of the sales price. Kilburn was expressly prohibited from selling the property during the period. On August 23, 1967, Kilburn sent to Seattle Investment Company a letter purporting to cancel the exclusive listing agreement. On September 2, 1967, Kilburn sold the tavern through another agent for $65,000. Seattle Investment Company brought action to recover the agreed commission of $6,500 on grounds of breach of the listing agreement. The Kilburns appeal from a judgment of $6,500 entered in favor of Seattle Investment Company.

Kilburn contends that the proper measure of damages is the value of the services rendered and such prospective profits as can reasonably be established would have been earned but for the wrongful revocation of the authority to sell. Seattle Investment Company argues that the damages were the agreed commission.

Kilburn argues that Seattle Investment Company must show by a preponderance of the evidence that it would have been successful in its efforts to sell the property. In the absence of such a showing, Kilburn argues, any recovery must be based on a theory of quantum meruit. Decisions dealing with the termination of a contingent fee agreement between attorney and client are cited as authority for this position. Although the contingent fee agreement is similar in nature to the listing agreement, the two are distinct in several important respects.

Because of the personal and confidential nature of the attorney-client relationship, the client may, at any time and for any reason or without any reason, discharge his attorney. This does not constitute a breach of the contract. The right to discharge an attorney is a term of the contract, implied from the particular relationship that exists between attorney and client. The client retains the power and the right to discharge the attorney. Recovery therefore is necessarily based on quantum meruit and not on the

grounds of breach of contract. *See Wright v. Johanson,* 132 Wash. 682, 233 P. 16 (1925). In such cases, an attorney can only recover for the value of services actually rendered. *See Hamlin v. Case & Case, Inc.,* 188 Wash. 150, 61 P.2d 1287 (1936), *Ramey v. Graves,* 112 Wash. 88, 191 P. 801 (1920), and *Dill v. PUD 2,* 3 Wn. App. 360, 475 P.2d 309 (1970).

■ The Kilburns had the power to withdraw from Seattle Investment Company the authority to sell the property but they did not have the right to revoke the contract. See 1 A. Corbin, Contracts § 50 (1963). The attempt to revoke the listing agreement was a breach of a bilateral contract, not a unilateral termination of the agreement as the Kilburns argue.

> The purpose of awarding damages for breach of contract is neither to penalize the defendant nor merely to return to the plaintiff that which he has expended in reliance on the contract. It is, rather, to place the plaintiff, as nearly as possible, in the position he would be in had the contract been performed. He is entitled to the benefit of his bargain, *i.e.,* whatever net gain he would have made under the contract. [Citing cases.]
>
> The plaintiff is not, however, entitled to more than he would have received had the contract been performed. If the defendant, by his breach, relieves the plaintiff of duties under the contract which would have required him to spend money, an amount equal to such expenditures must be deducted from his recovery.

*Platts v. Arney,* 50 Wn.2d 42, 46, 309 P.2d 372 (1957).

> If . . . the broker has been prevented from procuring a customer as a result of the principal's breach of contract, as for example, where the principal, having bound himself to give the broker a stipulated time in which to find a customer, wrongfully revokes, the broker can recover, as damages for breach of contract, the amount of the commission which he can show he would have earned, minus the expenses he would have had to incur to earn it.

Restatement (Second) of Agency, § 445, comment ƒ (1958).

The trial court found as a fact that Seattle Investment Company had a party interested in the property. No finding

was made on the question of whether Seattle Investment Company would have sold the property within the 90-day period. Kilburn contends that the Investment Company had the burden of proving by a preponderance of the evidence that it would have been successful in its efforts to sell the property. We disagree. When there is a revocation and a subsequent sale within the period of the exclusive listing agreement, it will be presumed that the broker with the exclusive listing would have made the sale.

Where, . . . a real-estate broker has an exclusive listing and has established that the property described in the listing agreement has been sold, a *prima facie* case is established for a commission upon the entire sales price.

*Fleetham v. Schneekloth,* 52 Wn.2d 176, 179, 324 P.2d 429 (1958).

We find no evidence to rebut the presumption. Affirmed.

JAMES and SWANSON, JJ., concur.

Petition for rehearing denied September 14, 1971.

Review denied by Supreme Court October 18, 1971.