No. 13654

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

McDONALD & CO., a
Montana Corporation,

                Plaintiff and Respondent,

-vs-

FISHTAIL CREEK RANCH LIMITED
PARTNERSHIP, A Montana Limited
Partnership, and JAMES R. REGER,

                Defendants and Appellants.

---

Appeal from:  District Court of the Thirteenth Judicial
              District,
              Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellants:

        Moses, Tolliver and Wright, Billings, Montana
        Kenneth D. Tolliver argued, Billings, Montana

    For Respondent:

        Hibbs, Sweeney and Colburg, Billings, Montana
        Maurice R. Colberg, Jr. argued, Billings, Montana

---

                Submitted:  September 23, 1977
                Decided:  NOV 29 1977

Filed:

*Thomas J. Kearney*  Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff McDonald & Co. initiated this action in the District Court, Yellowstone County, to recover damages for defendants' alleged breach of a real estate listing agreement. Defendants counterclaimed to recover damages purportedly caused by plaintiff's breach of a broker's fiduciary duty. The jury returned a verdict and judgment was entered awarding plaintiff damages in the sum of $11,830 and awarding defendants damages on their counterclaim in the sum of $10,000. Plaintiff filed an alternative motion to alter or amend the judgment. The District Court granted the motion and an amended judgment on the verdict was entered awarding plaintiff damages in the sum of $11,830 and awarding defendants damages on their counterclaim in the sum of $2,500.

Defendants appeal from the District Court's amended judgment allowing plaintiff to recover $11,830 in damages and granting plaintiff's alternative motion to amend the judgment by reducing defendants' amount of recovery on their counterclaim from $10,000 to $2,500. Plaintiff appeals from the District Court judgment allowing defendants to recover on their counterclaim.

The issues presented on appeal are:

1. Whether plaintiff McDonald & Co. should be entitled to recover a commission under the listing agreement?

2. Whether the written listing constituted merely a written confirmation of just one part of the overall oral contract between the parties which could be repudiated and thereby allow defendants to deem all agreements at an end?

3. Whether the District Court erred in reducing the jury's verdict to defendants on their counterclaim?

- 2 -

McDonald & Co. is a Montana corporation located in Billings, Montana, engaged in the business of selling real estate. Sam E. McDonald, Jr., is the president and majority stockholder of McDonald & Co. Fishtail Creek Ranch is a limited partnership organized under the laws of Montana and qualified to do business in Montana. Its original articles of limited partnership were executed on May 1, 1973. James R. Reger is listed as the general partner with limited partners Russell C. Clark, Sam E. McDonald, Jr., John O. Odegaard, James R. Reger, S. C. Sande, C. B. Sand, and S.J. Sande. Mr. Reger testified he received a monthly salary of $250 as compensation for his duties as general partner.

In the spring of 1973, Reger became associated with McDonald & Co. as a real estate salesman. He received his real estate license in June 1973. Reger and McDonald purportedly formed an oral agreement as to the division of commissions between the broker and salesman upon the sale of property. Reger remained associated with McDonald & Co. until mid-January 1974. During his employment with McDonald Reger's major efforts were devoted to negotiating the sale of Fishtail Creek Ranch, a cow ranch, formerly known as the Partington Ranch located in Stillwater County, Montana. The ranch was purchased by Fishtail Creek Ranch Limited Partnership as an investment property.

An instrument entitled "EXCLUSIVE RIGHT TO SELL RANCH AND ACREAGE LISTING FORM" was executed by Sam E. McDonald, Jr., and James R. Reger, in his capacity as general partner of Fishtail Creek Ranch Limited Partnership. The instrument is dated June 20, 1973; however, the testimony of the signators

indica tes the instrument was not executed until sometime in November 1973. The instrument indica tes the listing was not to expire until June 19, 1974. The apparent motive for predating the instrument was to guarantee McDonald & Co. a commission from any sale of Fishtail Creek Ranch which might have been precipitated after June 20, 1973.

During Reger's employment with McDonald & Co. there were several attempts to consummate a sale of Fishtail Creek Ranch. In July 1973, Jim O. Mayo executed an agreement to purchase Fishtail Creek Ranch for $235,000. Mayo deposited $1,000 with McDonald & Co. as consideration for an option to purchase, the option to expire August 31, 1973. Mayo was unable to obtain financing for the purchase and requested a refund of his $1,000. McDonald & Co. returned $800 to Mayo, $200 was forfeited to the limited partnership.

In October 1973 McDonald & Co. in an alleged attempt to precipitate sale of the Fishtail Creek Ranch, contracted with Mueller Engineering for the subdivision and plotting of some ten acre tracts on the property. McDonald & Co. paid the costs for the subdivision work and was purportedly reimbursed by Fishtail Creek Limited Partnership for all costs incurred in listing the property.

On November 9, 1973, an agreement for the purchase of Fishtail Creek Ranch (exclusive of the area being subdivided) was executed by Reger, in his capacity as general partner for Fishtail Creek Ranch Limited Partnership, and the purchasers, Jack D. Shanstrom, Morris P. Blakely, and Arnold Huppert, Jr. The agreement incorporated a contract for deed which provided

- 4 -

for the deposit of earnest money. The typed contract specified an earnest money deposit in the amount of $5,000. However, the printing on the instrument had been struck out by a pen and the figure $15,000 written in as a substitution. The facts reveal that only $5,000 was ever received by Sam E. McDonald, Jr. Checks totaling an additional $10,000 were retained by the attorney for the buyers and these checks were eventually returned to the buyers when the prospective purchase fell through.

On January 11, 1974, the parties to the purchase agreement executed a "MUTUAL RELEASE" providing that Fishtail Creek Ranch Limited Partnership "retain the $5,000 earnest money which is presently deposited in the escrow account of McDonald & Company." Further, that the purchasers be released from all claims or demands arising out of the agreements executed by the parties for the purchase of Fishtail Creek Ranch. The $5,000 was delivered to Fishtail Creek Ranch Limited Partnership.

Reger's association with McDonald & Co. was terminated in January 1974. The purported basis for termination of the employment relationship was Reger's refusal to accept McDonald's contractual conditions for the 1974 employment year. By letter of February 1, 1974, counsel for Reger informed McDonald that the listing agreement for Fishtail Creek Ranch was terminated as of January 28, 1974, the date when the parties allegedly severed their association.

Reger subsequently went to work for Northwest Real Estate, a real estate brokerage firm located in Billings. By May 1, 1974, Reger had sold eight of the previously subdivided tracts for a total amount of $123,000. Six of the eight tracts were

- 5 -

sold to or through representatives of Mueller Engineering.
On April 19, 1974, James E. Edwards entered an option contract
to purchase Fishtail Creek Ranch for $215,000. Edwards
eventually exercised the option.

Issue 1. It is necessary to decide whether or not the
listing agreement between McDonald & Co. and Fishtail was
exclusive or nonexclusive. The pertinent parts of the listing
agreement are:

The title reads:"EXCLUSIVE RIGHT TO SELL RANCH AND ACREAGE
LISTING FORM";

The body sets forth: "Agreed Commission Seven percent (7%)
of Sales price

"Exclusive Listing McDonald & Co.
"Exclusive Agency  No  Non-Exc. no
"Commences June 20, 1973 Expires June
19, 1974."

The agreement is on a printed form. The items inserted in
the blanks are typed into the printed form. It is obvious there
can be no other reasonable construction of this agreement than
that it grants an exclusive listing to the broker whose name
is typed in the appropriate blank, "McDonald & Co.". The
exclusive listing agreement to that broker has a one year period
of duration commencing June 20, 1973 and expiring June 19, 1974.
The word "no" is inserted in the blank after the form provision
of "Non-Exc.". Certainly that means the agreement is not a
nonexclusive agreement and therefore, the nonexclusive reference
contained in the last paragraph of the portion of the agreement
quoted above does not control. The agreement as a whole speaks
of an exclusive listing agreement.

- 6 -

The form provides that a commission must be paid upon any actual sales prior to the "termination of such right." Defendants argue the February 1, 1974, letter giving notice the listing agreement was terminated, unilaterally terminated the listing agreement. Plaintiff contends defendants could not unilaterally terminate the listing agreement. In Kester v. Nelson, 92 Mont. 69, 73, 10 P.2d 379 (1932), this Court stated:

> "'Persons competent to contract can as validly agree
> to rescind a contract already made as they could
> agree to make it originally. However, as a contract
> is made by the joint will of two parties, it can be rescinded
> only by the joint will of the two parties. It is
> obvious that one of the parties can no more rescind the
> contract without the other's express or implied assent,
> than he alone can make it.'"

In the instant case, there was no mutual assent. In fact, after Sam McDonald received the termination letter of February 1, 1974, he personally told James Reger that the exclusive listing agreement was still in effect until its termination date. In Cloe v. Rogers, 31 Okl. 255, 121 P. 201 (1912), the court, relying on similar facts as are found in the instant case, stated a general rule that:

> "* * * where an agency is uncoupled with an interest,
> it may be revoked by the principal at will, without
> liability for damages; but where it is for a fixed
> time, and contempla tes on the part of the agent the
> expenditure of time and money to carry it out, and is
> accepted, and the duties imposed are entered upon by
> the agent, and money and time are expanded in pursuance
> of the object of the agency, that, although the principal
> has the power to revoke and bring to a termination the
> contract, yet he lacks the right of so doing, except upon
> the burden of responding to the agent for such damages
> as he may suffer by reason thereof." 121 P. 203.

Issue 2. Defendants in their second issue raise an ingenious but unmeritorious argument. They allege McDonald & Co. breached its employer-employee relationship with James Reger and this breach also breached the exclusive listing agreement between

McDonald & Co. and Fishtail on the premise that the general partner signing that agreement for Fishtail was also James Reger. Defendants cite section 13-708, R.C.M. 1947, as authority. That statute requires that contracts to be considered as one transaction must (1) relate to the same matter; (2) be between the same parties. It is obvious that any employer-employee agreement between McDonald & Co. and Reger personally, has no connection with the exclusive listing agreement for the sale of the Fishtail properties. The two agreements were between different parties. The employer-employee agreement was between McDonald & Co. and Reger personally. The exclusive listing agreement is between McDonald & Co. and Fishtail.

Again, in Cloe v. Rogers, supra, it is stated:

"'Where an agent has an agreement with his principal to sell certain lands, which have been placed in his hands to be disposed of within a time limited, and the agent is to receive no pay or compensation for advertising, putting the same upon the market, or for his services, excepting a share of the profits arising from the sales of the lands, and in the performance of such agreement he renders services for several months, and expends time and money, and then, without any reason or excuse, the principal revokes the contract, the agent is entitled to recover from the principal such compensation in damages as will be equal in amount to his share of the profits which would have resulted had the lands been sold by him." 121 P. 207.

In the instant case, McDonald & Co. not only advertised this land in major newspapers throughout the country, it also arranged for part of these lands to be surveyed and platted so it could be subdivided. Robert Sanderson, president of Mueller Engineering, testified:

"Q. Who first contacted you concerning this work? A. Our records indicate that Randy Reger was our first contact on the project.

"Q. One of the defendants in this case is James R. Reger. Is that the person you refer to as Randy Reger? A. That's correct.

"Q. Did you understand that he represented another firm at that time? A. Yes. Again, our file indicates that Randy Reger was the contact on the project and our client was actually McDonald & Company, of which we understood that he was an employee.

"Q. You mention your last bill of January 28, 1974. To whom was that directed, the bill? A. The statement was directed to the client, McDonald & Company."

As a result of contact with Mueller Engineering which was initiated by McDonald & Co., six of the subdivision tracts were sold to people associated with Mueller Engineering.

"It is a generally accepted law that a real estate broker is entitled to commissions when he has, in pursuance of his employment and within the time specified in the contract of employment, procured a purchaser able, ready and willing to purchase the seller's property on the terms and conditions specified in the contract of employment. Roscow v. Baia, 114 Mont. 246, 135 P.2d 364. * * *" Diehl and Associates, Inc. v. Houtchens, ____Mont.____, 567 P.2d 930, 34 St.Rep. 814, 817 (1977).

When, as in the instant case, there is a revocation and a subsequent sale within the period of the exclusive listing agreement, it will be presumed that the broker with the exclusive listing would have made the sale.

"'Where * * * a real estate broker has an exclusive listing and has established that the property described in the listing agreement has been sold, a prima facie case is established for a commission upon the entire sales price.'" Seattle Investment Company v. Kilburn, 5 Wash.App. 137, 485 P.2d 1005, 1007 (1971), quoting from Fleetham v. Schneekloth, 52 Wash.2d 176, 179, 324 P.2d 429, 431 (1958).

In the instant case the entire Partington ranch was sold within the time the exclusive listing agreement was in effect. Therefore, the District Court was correct in its award of commissions totaling $11,830 to McDonald & Co.

Issue 3. The final consideration on appeal is whether the District Court erred in reducing the jury's verdict to the defendants' counterclaim? Reger and Fishtail claim that McDonald

& Co. failed to collect an additional $10,000 earnest money in connection with the proposed Shanstrom, Blakely and Huppert sale. The agreement on this sale called for $15,000 earnest money. Of this $15,000 only $5,000 was ever received. The reason why the other $10,000 was not received is not clear from the record, however, James Murphy, attorney for the three buyers, testified:

"Q. Did you ever get authority from your clients to release those checks, totaling $10,000.00 to the seller of the property or the broker? A. No."

Whatever the reason for withholding the authority to deliver those checks, nowhere in the record does it disclose that McDonald & Co. was negligent in not collecting this $10,000. The Shanstrom, Blakely and Huppert agreement was terminated by all parties including Reger and Fishtail. A mutual release agreement was signed and dated January 11, 1974. This agreement was signed by Reger as general partner of Fishtail. It was also signed by the three buyers. All parties agreed that any contracts to purchase and sell the property were terminated. The buyers agreed that $5,000 earnest money could be forfeited to Fishtail and matters were in fact terminated. There is no question that there was a recognition in the execution of this agreement that $5,000 was the total amount of earnest money to be forfeited on behalf of the buyers.

Here, the record not only fails to substantiate damages but it is devoid of any wrongdoing by McDonald in collecting the earnest money. Therefore, Fishtail on its counterclaim is entitled to nothing and the District Court is affirmed with respect to the

judgment of $11,830 awarded to plaintiff-respondent.   The

judgment awarding the sum of $2,500 to defendants-appellants

is vacated.

_____
                          Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.