[No. 36883-4-I.    Division One.    January 27, 1997.]

JOHN WILLIAM TAYLOR, ET AL., *Appellants,* v.
PAULINE YURI SHIGAKI, ET AL., *Defendants,* FRED
ZEDER, ET AL., *Respondents.*

*Heather Houston* and *Gibbs, Houston & Pauw,* for appellants.

*Michael Caryl,* for respondents.

COLEMAN, J. — John Taylor discharged his attorney, Fred Zeder, in a personal injury action nine days before trial and after Zeder had negotiated a settlement offer of $225,000. Taylor claims the trial court erred in concluding that Zeder substantially performed the contingency fee contract entitling him to a one-third share of the settlement offer. We hold that Zeder is entitled to the contingency fee because he substantially performed the contract.

## FACTS

On February 10, 1993, Taylor was hit by a car driven by Pauline Shigaki. Shigaki carried an automobile insurance policy with American States Insurance Company, providing a $300,000 liability limit as well as personal injury protection for medical expenses and wage loss.

As a result of the collision, Taylor suffered numerous injuries, including partial loss of use of his right thumb. Taylor hired Zeder to handle his claim against Shigaki. Zeder filed a summons and complaint on February 25, 1993, and the case of *Taylor v. Shigaki* was scheduled for trial on September 21, 1994.

On February 28, 1993, Taylor and Zeder negotiated a contingency fee contract. The contract provided in part: "Clients will make the final determination in accepting any monies in settlement or compromise; however, no settlement or compromise will be made in such a way as to exclude the attorneys from their contingent fee and repayment of costs advanced." Another paragraph of the

agreement provided that "[i]f Clients . . . discharge Attorney, Clients agree to pay Attorneys a reasonable fee for services performed at the rate of $200 per hour, plus any costs or expenses incurred by or on behalf of the Clients."

In April 1993, Zeder went on a six-month sabbatical and assigned Taylor's case to his associate, Faye Freedman. During Zeder's sabbatical, Freedman submitted Taylor's medical bills to American States for payment under Shigaki's PIP coverage and collected the checks for Taylor. She negotiated a settlement of Taylor's property damage claim. Freedman also spoke with Taylor on numerous occasions, answering his questions about the case, and attended Taylor's deposition.

When Zeder returned from his sabbatical on October 1, 1993, Taylor told Zeder that he was not happy with Freedman and that he wanted Zeder to handle his case. Zeder agreed and, besides conducting discovery, attended Taylor's medical examination by Dr. Alfred Blue, a respected hand doctor, who suggested that Taylor's thumb injury was permanent. Zeder presented Dr. Blue's conclusions to Taylor's treating physician, who was persuaded that Taylor's thumb injury was more serious than he had previously thought.

On May 10, 1994, Zeder sent a letter to James McGowan, in-house counsel at American States, demanding Shigaki's liability policy limits. On May 11, 1994, Taylor called Zeder to complain that he did not have a chance to review the letter and compare the numbers to his damage estimates. But the letter did prompt Shigaki to retain her own lawyer, who sent a "hammer letter" pressuring American States to pay their policy limits or risk a bad faith claim.

By this time, many disagreements had developed between Taylor and Zeder over how the case should be presented and handled. On May 16, 1994, Zeder wrote to Taylor stating that Taylor had the right to fire his attorney at any time. On May 24, Zeder sent a second letter, informing Taylor that if he discharged Zeder's firm, Taylor

would be responsible under their agreement for paying $200 per hour for services rendered. Taylor did not fire his attorneys at this time.

On August 25, 1994, American States' adjuster David Boyer contacted Zeder and offered to settle Taylor's claim for $225,000. Taylor rejected the offer and stated that nothing less than the policy limit was acceptable. On August 30, 1994, Zeder obtained a summary judgment establishing Shigaki's liability to Taylor.

Taylor then began looking for another lawyer, but he was not able to find a firm that would accept the case. On September 6, 1994, Taylor called Boyer on his own initiative to schedule a meeting. Boyer advised Taylor that he could not talk with him alone while he was represented by an attorney and advised Taylor to have Zeder schedule the meeting. When Taylor asked Zeder to do this, Zeder advised against it, reasoning that it would make them look too eager to settle. Taylor never told Zeder that he had directly contacted Boyer.

On September 9, 1994, Zeder called Boyer at American States, who informed him of Taylor's attempt to schedule a meeting. Zeder was furious but, after a heated conversation with Taylor, he scheduled a meeting with Boyer for September 12, 1994.

On the morning of September 12, 1994, Taylor fired Zeder by faxed letter. That afternoon, Taylor met with Boyer and negotiated a $272,343.76 settlement. The figure represented the $300,000 policy limit minus sums American States had paid on Taylor's PIP and property damage claims. Taylor was not aware that the PIP costs were separate from those covered by the liability policy and that the full $300,000 liability policy limit was still recoverable. The trial court found that if Taylor had not fired Zeder, these deductions would not have occurred.

On September 13, 1994, Zeder filed an attorney's lien for $75,000, one-third of the $225,000 settlement offer that Zeder originally obtained. Taylor commenced this litigation in a petition to determine the reasonableness of at-

torney fees. The court found that Zeder had substantially performed the contingency fee contract when he obtained the settlement offer of $225,000, entitling his firm to the $75,000 contingency fee. It also awarded $30,685.50 in attorney fees to Zeder. Finally, the court ruled that Zeder's contingency fee was a liquidated sum and thus awarded $5,992.38 in prejudgment interest and $2,185 in additional attorney fees for having to contest this matter.

## ANALYSIS

■ We first address whether Zeder substantially performed the contingency fee contract before he was fired. The determination of substantial performance is a question of fact, and we will reverse only if there is no substantial evidence to support the trial court's conclusion. 3A ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 704, at 318 (1960); *Ridgeview Properties v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

Generally, an attorney who is discharged before full performance under a contingency fee contract is not entitled to the contingency fee. *Ramey v. Graves*, 112 Wash. 88, 91, 191 P. 801 (1920). Instead, the court will award the attorney reasonable fees for the services rendered before the discharge. *Ramey*, 112 Wash. at 91. This award is normally made on the basis of quantum meruit, meaning "as much as he [or she] deserve[s]," to prevent unjust enrichment. BLACK's LAW DICTIONARY 1408 (4th ed. 1968). Taylor argues that Zeder is entitled only to the $200 hourly rate, which he accepts as a reasonable recovery in quantum meruit.

■ Full performance, however, is not required in all contingency fee cases. Washington courts have recognized an exception where an attorney is discharged after "substantially" performing the duties owed to a client. *E.g.*, *Barr v. Day*, 124 Wn.2d 318, 329, 879 P.2d 912 (1994); *Ramey*, 112 Wn. at 92; *Cavers v. Old Nat'l Bank & Union Trust Co.*, 166 Wash. 449, 452, 7 P.2d 23 (1932); *Ross v. Scannell*, 97 Wn.2d 598, 609, 647 P.2d 1004 (1982). This

exception prevents clients from firing their attorneys immediately before the contingency occurs to avoid paying a contingency fee. *Barr*, 124 Wn.2d at 329.

The doctrine of substantial performance is applied in rare instances where only "minor and relatively unimportant deviations" remain to accomplish full contractual performance. 17A AM. JUR. 2D *Contracts*, § 634 (1991). Taylor urges this court to construe the substantial performance doctrine narrowly such that an attorney's right to a contingency fee vests only when an offer is accepted or a specific fund· is created. In these circumstances, the only remaining task would be to sign the papers. We reject this rule as too narrow. Because the decision to accept or reject settlement offers belongs to the client, Taylor's interpretation of substantial performance would eviscerate the usefulness of contingency fee contracts.

■ Here, the evidence supports the trial court's finding that the $225,000 settlement offer was obtained through Zeder and Freedman's efforts. Taylor's attorneys were responsible for completing discovery, obtaining favorable medical examinations, establishing liability, negotiating with American States, and pressuring the insurer to pay the liability policy limits. A discharged attorney has substantially performed his or her duties when the attorney's efforts make a settlement "practically certain," even if the settlement occurs after the client fires the attorney. *Clifford v. Wilcox*, 175 Wash. 513, 27 P.2d 722 (1933) (interpreting North Dakota law).

Taylor argues that *Barr* controls this case. There, the court found that an attorney had not substantially performed his duties because he was fired after more than three years of delay, eleven months before the case was settled, and before any negotiations had begun. *Barr*, 124 Wn.2d at 329. Zeder, in contrast, was fired nine days before the trial date, after a substantial offer of settlement had been made, and six hours before Taylor met with the claims adjuster to negotiate a final settlement. *Cf. Cavers*, 166 Wash. at 452-53 (court denied fees when attorney pre-

sented no evidence of any services performed or value conferred). In this case, the evidence supports the conclusion that Zeder substantially performed the contract when his efforts produced an opening settlement offer of 75 percent of the insurance policy limits on the eve of trial.

■ Taylor argues that because he has the right to discharge his attorney at any time, he has "an absolute right to remove himself from the contract and its obligations at any time." We agree that Taylor had the right to discharge his attorney at any time, with or without cause. *Seattle Inv. Co. v. Kilburn*, 5 Wn. App. 137, 138, 485 P.2d 1005, *review denied*, 79 Wn.2d 1011 (1971); *Kimball v. P.U.D. 1*, 64 Wn.2d 252, 257, 391 P.2d 205 (1964). But although a client may fire his attorney at any time, the client has no right to pay less than the attorney has earned. Taylor argues that by forcing him to pay the contingency fee, the court is punishing him for firing his attorney. However, holding clients to the obligations they have undertaken is not a punishment. We affirm the trial court's conclusion that Zeder earned the $75,000 contingency fee.

■ Taylor argues that applying the doctrine of substantial performance renders the contract ambiguous because it states that if he discharges Zeder, he owes $200 per hour. But the contract also provides that no settlement will be made "in such a way as to exclude the attorneys from their contingent fee[.]" Taylor is held to the implied duty of good faith and fair dealing which obligated him to cooperate with Zeder so that he could obtain the full benefit of his performance. *Cavell v. Hughes*, 29 Wn. App. 536, 539, 629 P.2d 927 (1981). Contracts need not recite every legal doctrine to avoid ambiguity. Moreover, the court will not give effect to interpretations that would render contract obligations illusory. *Kennewick Irrig. Dist. v. U.S.*, 880 F.2d 1018, 1032 (9th Cir. 1989). If a client is allowed to use an attorney's services to obtain a settlement offer and then fire the attorney before accepting to escape paying a contingency fee, the obligation to pay the fee could be unilaterally avoided. Such a result cannot be sanctioned.

Taylor attempts to distinguish his case based on Zeder's May 24, 1994, letter advising: "If you discharge us we are entitled to payment of a reasonable fee in the amount of $200.00 per hour." Taylor fired Zeder over three months after receipt of this letter. Contrary to Taylor's claim, we find that Zeder had no duty to correct this statement once he obtained the settlement offer or otherwise substantially performed. The letter correctly stated the consequences of discharge at the time it was written. When Taylor did not fire him, Zeder was justified in believing that their differences had been or would be mended.

■ The court below found that Taylor's purpose in contacting Boyer was to deprive Zeder of his contingency fee. The trial court is in a better position than this court to weigh the credibility of testifying witnesses. *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 369-70, 798 P.2d 799 (1990). The timing and circumstances of the events leading up to the discharge support the trial court's finding that Taylor determined to discharge Zeder at least by September 2, 1994, after he was informed of the $225,000 settlement offer.

■ We affirm the award of attorney fees that Zeder incurred in enforcing the contract. While Taylor had the right to fire Zeder, his refusal to pay the fee that Zeder had earned through substantial performance was a breach of contract. The contract expressly provides for the award of reasonable attorney fees and costs that the nonbreaching party incurs in enforcing the agreement. Taylor does not challenge the amount of fees the court awarded to Zeder ($30,685.50) as unreasonable. As the prevailing party, Zeder is entitled to attorney fees and costs of this appeal as well.

■ We must next determine whether the trial court erred by ruling that since Zeder's one-third share of the $225,000 settlement offer was a liquidated amount, Zeder was entitled to prejudgment interest under RCW

19.52.010.[1] This action was brought as a petition for a determination of reasonable attorney fees under RCW 4.24.005. That statute directs the court to consider a number of factors, such as the time and labor involved, the amount involved, the experience of the lawyer, whether the fee is fixed or contingent, and the terms of the fee agreement.

Taylor argues that the court's inherent discretion under RCW 4.24.005 precludes a finding that a claim for attorney fees can be liquidated. The statute, through its multifactor approach, normally calls for the exercise of the court's discretion in determining the reasonableness of fees. But in this case, neither of the parties' claims called for the exercise of the court's discretion. The dispute was over which of two contractual payment clauses to apply. Both clauses provide an amount that can be computed without exercising discretion.

The fact that the parties disputed the amount owed does not affect this result. "Mere difference of opinion as to the amount is . . . no more a reason to excuse [a party] from interest than difference of opinion whether he legally ought to pay at all, which has never been held an excuse." *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 34, 442 P.2d 621 (1968) (italics omitted) (quoting *Laycock v. Parker*, 79 N.W. 327 (Wis. 1899)). The court properly awarded prejudgment interest.

We affirm.

GROSSE and BECKER, JJ., concur.

Review denied at 132 Wn.2d 1009 (1997).

---

[1]Prejudgment interest is allowable only when (1) an amount claimed is "liquidated;" or (2) the amount of an "unliquidated" claim is for an amount of money that is "determinable by computation with reference to a fixed standard contained in [a] contract, without reliance on opinion or discretion." *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968). A "liquidated" claim is defined as one whose "exact amount is fixed and known." *Prier*, 74 Wn.2d at 32, *citing* CHARLES T. MCCORMICK, DAMAGES (HORNBOOK SERIES), § 54 (1935).