[No. 23129-1-III.    Division Three.    May 4, 2006.]

TATAYANA GONCHARUK ET AL., *Appellants*, v. SHAWN D. BARRONG ET AL., *Respondents*.

*Dustin D. Deissner* (of *Van Camp & Deissner*), for appellants.

*Mark D. Kamitomo* (of *The Markam Group, Inc., P.S.*), for respondents.

¶1 BROWN, J. — Attorney Mark Kamitomo received judgment on an attorney's lien filed in Tatayana and Valeryi Goncharuk's malpractice suit filed by the Goncharuks' new attorneys. The Goncharuks settled for less than the offer secured by Mr. Kamitomo before his alleged good faith discharge. Because the trial court did not err in deciding Mr. Kamitomo substantially performed the parties' contingent fee contract, we affirm.

## FACTS

¶2 On February 25, 2000, Tatayana and Valeryi Goncharuk retained Mr. Kamitomo and the Markam Group, Inc., P.S., to handle a medical malpractice claim against Ms. Goncharuk's surgeon, Shawn Barrong, M.D. Mr. Kamitomo investigated Ms. Goncharuk's kidney damage claims for 19 months, obtaining her medical records, partly located in Russia. Mr. Kamitomo hired experts in obstetrics, gynecology, pathology, and general surgery, who evaluated the care

received by Ms. Goncharuk. Mr. Kamitomo developed a liability theory and evaluated damages.

¶3 In December 2000, Mr. Kamitomo prepared a $750,000 demand letter that the Goncharuks reviewed and approved for submission to Dr. Barrong's insurance carrier. Dr. Barrong's carrier responded with counter offers increasing to $275,000 by September 2001. Then, Mr. Kamitomo wrote the Goncharuks, telling them he strongly recommended accepting the $275,000. And Mr. Kamitomo advised he had negotiated the settlement value by negotiating a $90,000 medical subrogation waiver.

¶4 In response, Mr. Kamitomo received a discharge letter from attorney Russell Van Camp. Mr. Kamitomo promptly turned over his extensive file together with notice of an impending attorney's lien for $91,666.66 (one-third of the $275,000 settlement offer) and $2,246.84 in costs. Mr. Kamitomo added a specific case law reference for the lien, *Taylor v. Shigaki,* 84 Wn. App. 723, 930 P.2d 340 (1997).

¶5 The Goncharuks sued Dr. Barrong and assistant surgeon Dr. Mark MacFarlane. On January 16, 2004, before trial, the Goncharuks settled with Dr. Barrong for $250,000. Dr. MacFarlane received a defense verdict after trial.

¶6 The Goncharuks petitioned to resolve Mr. Kamitomo's attorney lien. They argued Mr. Kamitomo's compensation should be based upon quantum meruit, not a contingency fee. At the fee hearing, Mr. Kamitomo presented testimony from Dr. Barrong's defense counsel, Dan Keefe, who related nothing had occurred during the litigation with Mr. Van Camp to add any additional value to the case. Mr. Kamitomo described his extensive work and his one-third contingency agreement. Although the fee agreement is not in our record, the Goncharuks do not dispute the contract terms.

¶7 The court ruled Mr. Kamitomo had substantially performed his contingency fee agreement, which entitled him to reasonable attorney fees. It found when the Goncharuks discharged Mr. Kamitomo, "only minor and relatively unim-

portant deviations remain[ed] in order to accomplish full contractual performance or a settlement." Clerk's Papers (CP) at 123. The court applied the one-third contingency fee to the $250,000 settlement and entered judgment for $83,333 in fees and $2,246 in costs. The Goncharuks waived presentment and approved the form and content of the court's findings of fact and conclusions of law. The Goncharuks appeal.

## ANALYSIS

¶8 The issue is whether, under these facts, the trial court erred in deciding Mr. Kamitomo substantially performed his contingency fee agreement with the Goncharuks and awarding him attorney fees and costs.

¶9 Initially, the Goncharuks assign error to several of the trial court's findings of fact and contend the findings are not supported by the evidence. However, as urged by Mr. Kamitomo, the Goncharuks waived the right to object to the court's findings by stipulating to their "form and content" when entered. CP at 126; *see Town of Selah v. Waldbauer,* 11 Wn. App. 749, 525 P.2d 262 (1974). Thus, in evaluating Mr. and Ms. Goncharuk's contentions of evidence insufficiency, the court's findings of fact are treated as verities. *See id.* Even so, the findings are amply supported in the record.

¶10 While the Goncharuks contend Mr. Kamitomo failed to prove he entered into a written contingency agreement with them, their arguments assume or tacitly admit a contingency fee agreement existed. The court found Mr. Kamitomo worked on Ms. Goncharuk's claim "[a]s part of its Contingency Fee Agreement." CP at 120. As discussed, the Goncharuks waived the right to object to this factual finding on appeal. The real issue is whether the court erred in finding Mr. Kamitomo substantially performed the agreement.

■ ¶11 Generally, an attorney who is discharged prior to full performance on a contingency fee contract is not entitled to a contingency fee. *Taylor v. Shigaki,* 84 Wn. App. 723, 728, 930 P.2d 340 (1997) (citing *Ramey v. Graves,* 112 Wash. 88, 91, 191 P. 801 (1920)). Instead, the attorney may receive reasonable fees for the services rendered in quantum meruit. *Taylor,* 84 Wn. App. at 728. Although full performance is normally required, Washington courts allow an exception for an attorney discharged after substantially "performing the duties owed to a client." *Id.* The exception is applied solely where "minor and relatively unimportant deviations" remain to accomplish full contractual performance. *Id.* at 729. In the context of settlement, an attorney substantially performs when his efforts make settlement "practically certain," even if settlement occurs after the attorney is discharged. *Id.*

■ ¶12 Whether an attorney has substantially performed under a contingency fee agreement is a question of fact. *Id.* at 728. This type of decision merits reversal on appeal only if no substantial evidence exists supporting the trial court's conclusion. *Id.*

¶13 Substantial evidence supports the trial court's key findings. Mr. Kamitomo investigated Ms. Goncharuk's claims for 19 months; obtained medical records (including some from Russia) and pathology slides; secured the services of experts in obstetrics, gynecology, pathology, and general surgery; and investigated the nature and extent of Ms. Goncharuk's kidney damage. Mr. Kamitomo met numerous times with the Goncharuks in meetings with an interpreter. Mr. Kamitomo then, with the Goncharuks' approval, negotiated with Dr. Barrong's insurance carrier and eventually secured a $275,000 settlement offer and a complete waiver of a $90,000 subrogation lien. At that point, settlement was "practically certain." *See Taylor,* 84 Wn. App. at 729. Substantial performance is further supported by the eventual settlement offer accepted by the Goncharuks, which was $25,000 less than the offer secured by Mr. Kamitomo.

¶14 Ms. Goncharuk's decision not to accept the original settlement offer does not change our analysis. The *Taylor* court specifically rejected that argument, holding the right to attorney fees does not depend on a client's acceptance of an offer. *See Taylor,* 84 Wn. App. at 729 ("Because the decision to accept or reject settlement offers belongs to the client, Taylor's interpretation of substantial performance would eviscerate the usefulness of contingency fee contracts."). Similarly, Mr. Van Camp's subsequent work on Ms. Goncharuk's case does not change our analysis because settlement remained a reasonable certainty. *See Barrett v. Freise,* 119 Wn. App. 823, 837, 82 P.3d 1179 (2003) (awarding attorney fees to the original attorney under a contingency agreement, even though the subsequent attorney engaged in nearly three years of litigation).

¶15 In sum, the court did not err in allowing Mr. Kamitomo's attorney lien under the contingency fee agreement. Substantial evidence supports the court's substantial performance determination.

¶16 Affirmed.

SWEENEY, C.J., and KULIK, J., concur.

Review denied at 159 Wn.2d 1002 (2007).