# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| CONSOLIDATED MIDLAND, INC., | ) | No. 77939-7-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARBOR VALLEY FARMS, LLC; | ) | UNPUBLISHED OPINION |
| JOHN ANTHONY HALL; NANCY | ) | |
| HALL; GERALD HALL, | ) | FILED: April 8, 2019 |
| | ) | |
| Respondents. | ) | |

VERELLEN, J. — Consolidated Midland, Inc. (CM) agreed to withdraw its adverse possession claims against Arbor Valley Farms, LLC and the Hall family (AVF) in exchange for AVF dismissing its timber trespass and waste counterclaims and granting CM a permanent easement for "access" on the "existing roads" on AVF's property. Because the parties objectively manifested in open court their intent to settle the lawsuit, there is an enforceable CR 2A settlement agreement. The parties' contemplation of the need to stake the roadway does not render the settlement a mere agreement to agree, especially in light of CM's unequivocal statements in the trial court that the in court agreement was enforceable. The trial court did not err when it determined the in court agreement was enforceable.

Therefore, we affirm.

## FACTS

In 1981, CM purchased three parcels in North King County. T&L Nursery, a subsidiary of CM, began operating a nursery on the property. In 1986, CM began using a strip of land on the south border of the adjacent parcel and a strip of land on the west border of the adjacent parcel. CM used portions of the two strips of land as access roads. Portions were also used for employee parking, equipment storage, and composting.

In 2012, John Hall and his parents, Jerald and Nancy Hall, purchased the adjacent parcel and formed AVF. In early 2013, the Halls complained about CM's use of the two strips of land. On September 17, 2014, CM filed this lawsuit to quiet title through adverse possession. In response, the Halls and AVF denied the adverse possession claim and raised counterclaims for timber trespass and waste.

On January 26, 2015, the court granted CM's motion for summary judgment on the adverse possession claim. The case proceeded on AVF's counterclaims. Trial was set for May 16, 2016.

On May 17, 2016, after pretrial motions but before jury selection began, the parties announced to the court they had reached a settlement agreement. Under the terms of the settlement agreement, "[t]he summary judgment on both access roads are retracted in exchange for the granting of a permanent easement on both access roads."[1] The agreement was read into the record in open court under CR 2A.

---

[1] Report of Proceedings (RP) (May 17, 2016) at 231.

On the same day, the parties traveled to the subject property and placed stakes to mark the easement boundaries. Counsel for CM drafted a handwritten "staking agreement" generally describing the easement boundaries.[2] The parties signed the staking agreement, and it was sent to the court the following day.

The parties agreed to have Thomas Woldendorp survey the property to establish a legal description of the easement. When Woldendorp was unavailable, Wolfgang Mueller, the president of CM, commissioned Triad Associates to conduct a survey. After receiving a copy of the survey, AVF objected to the survey and claimed CM moved the stakes referenced in the handwritten staking agreement. AVF obtained their own survey from Jeff Harstad. CM objected and claimed AVF's survey did not reflect their earlier agreement. CM moved to enforce the settlement agreement and asked the court to use the Triad survey to generate a legal description of the easement. AVF also moved to enforce the agreement but asked the court to use the Harstad survey.

On October 5, 2015, the trial court "ratified" the settlement agreement, rescinding summary judgment and granting an easement. The court determined "[i]t is clear that the parties intended that the easements follow the existing roads," but the court also acknowledged that "the parties indicated they needed to walk the property [ ] to confirm the location of the easement in question."[3] The

---

[2] Ex. 12.
[3] Clerk's Papers (CP) at 424-25.

court determined the staking agreement was ambiguous and reliance on outside evidence was necessary for interpretation. And the court held any ambiguities in the staking agreement must be interpreted in favor of AVF because it was drafted by CM's counsel.

In reviewing the Triad survey commissioned by CM and the Harstad survey commissioned by AVF, the court determined:

> The Triad survey does not appear to comport in any way with the agreement to follow the existing roads. The Harstad survey appears to come closer. However, the Harstad survey includes a granting of an easement from Consolidated Midland to the Halls/Arbor Valley Farms, which was not part of the settlement agreement.[4]

The court set an evidentiary hearing "for the sole purpose of interpreting the settlement agreement as to the location of permanent easements."[5]

On November 18, 2016, William Hawkins of Pace Engineers, Inc. surveyed the location of the existing access roads. The purpose of the survey "was to identify the property lines of the parties' parcels and to locate the existing travel way."[6]

The court held the evidentiary hearing on December 6, 2016, January 17, 2017, and March 7, 2017. And on June 6, 2017, the court issued an order finalizing settlement. In the order, the court characterized the issue as whether the staking agreement altered or amended the May 17, 2016 in-court CR 2A agreement.

---

[4] CP at 425.

[5] CP at 427.

[6] CP at 649.

The court found "[t]he CR 2A agreement provided the easements would be on 'existing roads,' which are not straight."[7] The court also found that after arriving at the property to place the stakes on May 17, 2016, the parties "orally agreed that it would simplify matters for description purposes to make the easements straight lines."[8] But the court concluded it was not possible to determine where the parties intended those lines to run because "[w]itnesses" memories were faulty as to what photographs were taken when, what stakes were planted by whom, and where the points of reference are."[9]

As a result, the court determined, the staking agreement could not alter the in-court agreement. The court concluded the agreement clearly provided the permanent easements would follow the existing access roads. Because the Pace survey outlined the existing roads, the court used the Pace survey to set the boundaries of the easement.

On December 18, 2017, the court entered the final order on CR 2A settlement agreement consistent with the June 6, 2017 order.

CM appeals.

---

[7] CP at 648.

[8] Id.

[9] Id.

## ANALYSIS

### I. Contract Formation

CM argues the trial court erred when it found the in court settlement agreement was a valid and enforceable contract. CM presents several overlapping theories to support this argument.

Contract interpretation is a mixed question of law and fact.[10] The primary purpose of contract interpretation is to ascertain the parties' intent.[11]

> [W]e ascertain the intent of the contracting parties "by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties."[12]

The validity and enforceability of a settlement agreement is determined under substantive contract law.[13]

First, CM contends the agreement was not enforceable because the parties did not mutually assent to the exact boundaries of the easement.

"An essential element to the valid formation of a contract is the parties' objective manifestation of mutual assent."[14] The objective manifestation test focuses "on the 'reasonable meaning of the contract language to determine the

---

[10] Mutual of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 424 n.9, 191 P.3d 866 (2008).

[11] Berg v. Hudesman, 115 Wn.2d 657, 663, 801 P.2d 222 (1990).

[12] Mutual of Enumclaw, 164 Wn.2d at 424 n.9 (internal quotation marks omitted) (quoting id. at 667).

[13] Evans & Sons, Inc. v. City of Yakima, 136 Wn. App. 471, 477, 149 P.3d 691 (2006).

[14] Cruz v. Chavez, 186 Wn. App. 913, 920, 347 P.3d 912 (2015).

parties' intent.'"[15] "'We impute an intention corresponding to the reasonable meaning of the words used.'"[16] When considering the parties' intent, we "'give effect to . . . the intent of the parties *at the time of execution*.'"[17]

On May 17, 2016, before reading the agreement into the record, AVF's counsel informed the court, "the agreement we've reached is they want to *use the road*."[18] According to the terms of the agreement, "[t]he summary judgment on both access roads are retracted in exchange for the granting of a permanent easement on both *access roads*."[19] When the court asked what the parties meant by "where the roads currently are," CM's counsel responded, "[t]he *existing roads*."[20] Moments later, CM's counsel reiterated that the parties' agreed the easement was on the "*[e]xisting road*."[21] At the time of execution of the agreement, CM and AVF mutually assented that the easement would follow the existing access roads.

Second, CM contends the agreement was not enforceable because the terms concerning the location and boundaries of the easement were not

---

[15] RSD AAP, LLC v. Alyeska Ocean, Inc., 190 Wn. App. 305, 315, 358 P.3d 483 (2015) (internal quotation marks omitted) (quoting Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712, 334 P.3d 116 (2014)).

[16] Id. (quoting Hearst Commc'ns Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005)).

[17] Id. at 316 (emphasis added) (alteration in original) (quoting 25 DAVID K. DEWOLF, KELLER W. ALLEN, & DARLENE BARRIER CARUSO, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 5:8, at 187-88 (3d ed. 2004)).

[18] RP (May 17, 2016) at 228 (emphasis added).

[19] Id. at 231 (emphasis added).

[20] Id. (emphasis added).

[21] Id. at 237 (emphasis added).

sufficiently definite. Rather, CM argues the parties formed an unenforceable agreement to agree because they still needed to stake the location of the road.

"An agreement to agree is 'an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete.'"[22] Agreements to agree are unenforceable in Washington.[23]

To form a contract, "the terms assented to must be sufficiently definite."[24] "If an offer is so indefinite that a court cannot decide just what it means and fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement."[25] "However, indefiniteness as to an immaterial term is not fatal. Where the parties have intended to finalize a bargain, any uncertainty as to incidental or collateral matters is generally not harmful to the validity of the contract."[26] Additionally, "Washington courts 'will not give effect to interpretations that would render contract obligations illusory.'"[27]

On May 17, 2016, before the parties read the CR 2A agreement into the record, AVF's counsel informed the court:

---

[22] Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 175-76, 94 P.3d 945 (2004) (quoting Sandeman v. Sayres, 50 Wn.2d 539, 541-42, 314 P.2d 428 (1957)).

[23] Id.

[24] Id. at 178.

[25] 16th Street Investors, LLC v. Morrison, 153 Wn. App. 44, 55, 223 P.3d 513 (2009).

[26] 25 DEWOLF et al., § 2:27, at 90-91 (citing Restatement (Second) of Contracts § 32-33, cmt. a (1981)).

[27] SAK & Assocs., Inc. v. Ferguson Const., Inc., 189 Wn. App. 405, 412, 357 P.3d 671 (2015) (quoting Taylor v. Shigaki, 84 Wn. App. 723, 730, 930 P.2d 340 (1997)).

[T]he only issue that we have is that we need to go out there and actually walk the road which is the boundary. Because the agreement we've reached is they want to use the road, we say, "Fine we'll give you an easement for the road, but you return the adverse possession property, and we'll just stake the road so everyone knows exactly where it is." So that is the only issue remaining before we can actually complete the settlement.[28]

A few moments later, John Hall asked, "How does this all work?" His counsel replied:

[T]he settlement we've agreed upon is going to be put on the record for the court. . . . But then we still have to go out and [ ] look at the boundary and do the stakes. The problem is, is that if there is a dispute on that, it kind of messes everything up. The problem is, is that my clients want to know exactly where it is going to be on the road. . . . [a]nd they want to visualize it. And so they need to actually go out there and stand in the road and say, "Put a stake here, here, here, here," and then we can measure it and then we actually have a physical description that everyone agrees to.[29]

CM's counsel offered to "put the other terms in, then only the staking would be left" and AVF's counsel agreed.[30]

After a question from the court, CM's counsel clarified the boundaries would be measured from the existing roads, and the parties would "stake that where everybody knows then what the permanent easement is."[31]

After the agreement was read into the record, the following exchange occurred:

COURT: From what I'm hearing, . . . I hear that there is a settlement reached, then the only contingency is simply the location—

---

[28] RP (May 17, 2016) at 228-29.

[29] Id. at 230-31.

[30] Id. at 231.

[31] Id. at 232.

9

AVF:      Of the road.

COURT:    —that needs to be simply confirmed.

AVF:      Correct.

CM:      Yes.

COURT:    It's not subject to dispute, we just—you just need to go out there to make sure that it's—

CM:      Existing road, we're going to stake it, and that's that.

AVF:      Well, actually, wait a minute . . . . The area was that they were going to say, "This is what I need in the road." Because the road meanders. In fact, you know, if you look at this, you can see immediately what the problem is, is that the road comes around. This one, it's not a problem, but the road comes around this corner and it does dipsy-doodle. And so, you know, what it is, is we asked Mr. Mueller, "What do you need?" And he says, "I need enough space for two of my carts to go by and a truck to go around." And we say, "That's no problem. We can agree to that." And that was what the basis was, that we were going to go out and stake the road to accommodate that. And that may take a little more, it may take a little less of what's actually there, but it's to give him that ability. . . . We need to go out there, we need to stake the road, and everybody agree, "Yeah, that's the road that's going to be"—that we agree on. And that's the only thing that remains.[32]

The agreement addressed the material terms regarding the easement. The parties agreed the easement would be on the existing access roads. At a certain point in the road, which the parties refer to as a "dipsy doodle," AVF agreed to

---

[32] RP (May 17, 2016) at 237-38.

allow CM enough room (width) for two carts[33] and a truck. The purpose of staking the road was to allow AVF to visualize the easement.

Although AVF's counsel mentioned the easement might require a little more or a little less at the "dipsy doodle," the parties' contemplation of staking the location did not constitute an agreement to agree. Neither party was free to walk away from the in court agreement. The court confirmed this point on May 17, 2016 before the parties left to go stake the roads:

> All right. So from my perspective, the case has been settled, can't go home tonight and say, "Changed my mind, Judge, let's keep going with the trial." I'm moving on to another case.[34]

In response, both parties agreed the case was settled. As long as the easement remained on the existing road at the width of the existing travel way, as agreed on the record, the agreement was binding. The only variation to width was limited to a defined standard (two carts and a truck) at one single point (dipsy doodle). In this context, staking the width of the two carts and a truck at the "dipsy doodle" is a collateral matter. CM's argument would effectively render the in-court agreement illusory. The parties objectively manifested an intent to be bound to a settlement, not an agreement to agree.

In the alternative, CM argues, even if the settlement agreement was enforceable, the failure of a condition precedent precluded enforcement. CM argues the parties' discussion about staking the road was a condition precedent.

_____

[33] As made clear in the numerous photographs admitted into evidence, the nursery uses unpowered uniformly sized four-wheel rectangular carts to move plants around. See CP at 329, 330, 332.

[34] RP (May 17, 2016) at 238.

11

Conditions precedent are "'those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available.'"[35]

Although "words such as 'provided that, 'on condition,' 'when,' 'so that,' 'while,' 'as soon as,' and 'after' suggest" a condition precedent,[36] CM fails to provide any meaningful argument or authority to establish the parties' in-court comments concerning staking should be construed as a condition precedent.

CM also challenges the trial court's conclusion that the staking agreement was ambiguous. The staking agreement provides three reference points, staked by the parties on May 17, 2016. The points connect to form a boundary on the south and west edges of AVF's property. The trial court heard three days of testimony concerning the location of the stakes. Neither party could identify precisely where the stakes were placed on May 17, 2016 nor document whether those stakes were subsequently moved. Our review of the record, along with CM's argument, does not give any further clarity to this issue. As a result, the trial court did not err when it concluded the staking agreement is ambiguous.

---

[35] Tacoma Northpark, LLC v. NW, LLC, 123 Wn. App. 73, 79, 96 P.3d 454 (2004) (quoting Ross v. Harding, 64 Wn.2d 231, 236, 391 P.2d 526 (1964)).

[36] Id. at 80 (quoting Jones Assoc. v. Eastside Prop., 41 Wn. App. 462, 46, 704 P.2d 681 (1985)).

## II. Judicial Estoppel

CM moved the trial court to enforce the settlement agreement. But on appeal, CM argues the trial court erred in enforcing the agreement. Judicial estoppel precludes CM from asserting a clearly inconsistent position.

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'"[37] In determining whether judicial estoppel applies, we consider three factors:

> (1) [W]hether the party's later position is "'clearly inconsistent with its earlier position,'" (2) whether acceptance of the later inconsistent position "'would create the perception that either the first or the second court was misled,'" and (3) whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party.[38]

"Acceptance of an initial position is a precondition to the application of judicial estoppel."[39]

On appeal, CM contends the agreement is insufficiently definite to be enforced. CM claims the parties entered into an unenforceable agreement to agree:

> [T]he exact location of the easement was a critical part of the agreement between the parties. Indeed, the entire settlement depended upon both sides mutual agreement to the easement location. Although the parties "agreed to agree" once they got to the property, the[y] ultimately found that each had a very different idea of

---

[37] Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)).

[38] Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 861-62, 281 P.3d 289 (2012) (quoting id. at 538-39).

[39] Taylor v. Bell, 185 Wn. App. 270, 284, 340 P.3d 951 (2014).

what the permanent easement should look like. As a consequence, the parties did not place a material term of the purported settlement agreement on the record, and once each party reviewed the other's survey, it beca[me] clear that they failed to agree upon all of the contract's material terms. Under these circumstances, a valid and enforceable contract cannot exist.[40]

This is clearly inconsistent with CM's position before the trial court. CM moved the trial court to enforce the in court settlement agreement.[41] Specifically, CM asked the court "to intervene one more time and enforce *the terms of the settlement reached during a trial in her court and read into the record.*"[42] And CM framed the issue as "Whether the court should enforce the settlement agreement reached in her court on May 17, 2016? – Yes."[43] CM's proposed order provided:

1. That the Summary Judgment order of January 26, 2015 is revised and rescinded, with the result that the property awarded to Consolidated Midland, Inc. by adverse possession in said order is nullified, said property returning to John Hall, Jerry Hall, Nancy Hall and Arbor Valley Farms[.]

2. That Consolidated Midland Inc. is granted a permanent easement for ingress and egress.[44]

AVF also sought to enforce the agreement but asked the court to use a different survey to describe the easement. In the context of addressing AVF's arguments, Mueller declared, "I have consistently said Consolidated will stick with what was said in court and stick with the signed staking

---

[40] Appellant's Br. at 32-33.

[41] CP at 184-86.

[42] CP at 185 (emphasis added).

[43] Id.

[44] CP at 209-10.

agreement."[45] And in CM's memorandum in opposition to AVF's motion, CM represented, "This matter is settled. It was settled on the basis of two unambiguous contracts—one, put on the record on May 17, 2016, and the second, the signed Staking Agreement of May 17, 2016 setting out the specific boundaries of Consolidated's permanent easement."[46]

The court accepted CM's representations when it entered its October 11, 2016 order ratifying the CR 2A agreement. The court determined, "It is clear that the parties intended that the easements follow the existing roads."[47] And the court concluded, although the parties appeared to agree to use straight lines, "rather than the somewhat meandering version of the existing roads," the staking agreement memorializing the location of the straight lines was ambiguous.[48] As a result, the court denied CM's request that the Triad survey be used to define the easement. "The Triad survey does not appear to comport in anyway with the agreement to follow the existing roads . . . and goes into unimproved Hall/AVF property, contrary to the settlement agreement."[49] The court ordered, "the settlement agreement entered in court on May 17, 2016 is ratified as follows: . . . Consolidated Midland, Inc., together with John Hall, Jerry Hall, Nancy Hall, and

---

[45] CP at 342.
[46] CP at 360.
[47] CP at 425.
[48] CP at 424-25.
[49] CP at 425.

Arbor Valley Farms, LLC, are granted permanent easements for ingress and egress for both access roads."[50]

CM asks this court to reverse the court's order ratifying the settlement agreement and rescinding summary judgment. The result would be to reinstate the adverse possession judgment in favor of CM and proceed to trial on AVF's counterclaims. This would create an unfair advantage for CM. CM repeatedly represented to the trial court that the in court settlement agreement was enforceable. The trial court accepted these representations when it ratified the agreement. CM cannot assert on appeal that the in court agreement was unenforceable.

## III. Requirements of CR 2A

CM also contends the court abused its discretion in enforcing the settlement agreement because the agreement did not strictly comply with the requirements of CR 2A.

A trial court's authority to compel enforcement of a settlement agreement is governed by CR 2A and RCW 2.44.010.[51] We review a trial court's decision to enforce a CR 2A settlement agreement under the abuse of discretion standard.[52] A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons.[53]

---

[50] CP at 426.

[51] Morris, 69 Wn. App. 865, 868, 850 P.2d 1357 (1993).

[52] Id.

[53] Id.

CR 2A provides:

No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

Similarly, RCW 2.44.010 provides:

An attorney and counselor has authority:

(1) To bind his or her client in any of the proceedings in an action or special proceeding by his or her agreement duly made, or entered upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him or her, or signed by the party against whom the same is alleged, or his or her attorney.

CR 2A "precludes enforcement of a disputed settlement agreement not made in writing or put on the record, whether or not common law requirements are met."[54] And even if the "in writing or put on record" requirements have not been satisfied, the court is precluded from enforcing the agreement only if there is a genuine dispute over the existence of material terms of the agreement.[55]

Here, because the parties did read the terms of the settlement agreement into the record in open court on May 17, 2016, CR 2A does not bar enforcement of the agreement.

---

[54] In re Marriage of Ferree, 71 Wn. App. 35, 40, 856 P.2d 706 (1993).
[55] Id. at 40-41.

CM also argues CR 2A bars enforcement if the agreement does not contain all material terms. But CM fails to cite any authority to support this assertion, and a review of the rule and surrounding case law does not reveal such a requirement.

CR 2A does not preclude enforcement of the settlement agreement.

## IV. Fees on Appeal

AVF seeks fees on appeal under RAP 18.9.

Under RAP 18.9(a), an appellate court "may order a party . . . who uses these rules for the purpose of delay . . . to pay terms or compensatory damages to any other party who has been harmed by the delay." "An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there was no reasonable possibility of reversal."[56]

Although CM's appeal is unsuccessful, the appeal is not frivolous because it presents debatable issues. We deny AVF's request for fees on appeal.

Therefore, we affirm.

WE CONCUR:

---

[56] Fay v. Nw Airlines, Inc., 115 Wn.2d 194, 200-01, 796 P.2d 412, 415 (1990).