[No. 60620-0.  En Banc.  August 11, 1994.]

ELLA BARR, *Individually and as Personal Representative, Respondent*, v. GERALD G. DAY, ET AL, *Petitioners.*

320

*Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* by *Sam B. Franklin,* for petitioners Day.

*Evans, Craven & Lackie, P.S.,* by *James S. Craven* and *Philip J. Van de Veer,* for petitioners Stamper, et al.

*Crary & Clark, P.S.,* by *Robert B. Crary,* for respondent.

*Paulette Peterson* on behalf of Washington Defense Trial Lawyers, amicus curiae for petitioners.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae.

[Dissenting opinion of JOHNSON, J., amended by order of the Supreme Court October 6, 1994.]

DURHAM, J. — Attorneys Gerald Day and Randall Stamper represented Ella Barr and her deceased husband Lewis in a tort action against his employer, a tugboat operator. Lewis Barr had suffered a severe head injury in an accident while working on a tugboat. The suit settled prior to trial, and the settlement was approved by the Superior Court. Attorney Steven Stocker acted as Lewis Barr's guardian ad litem, and recommended approval of the settlement, including an award of attorney fees.

Ella Barr subsequently filed suit contending that the award of attorney fees was excessive and a breach of contract, and that Day and Stamper breached their fiduciary duties by failing to advise the Barrs, in light of Lewis's poor health, of the possibility of a lump sum settlement instead of a structured settlement. The suit also alleged that Stocker negligently approved the settlement. The trial court dismissed Barr's claims on summary judgment as barred by collateral estoppel as to Day and Stamper, and by witness immunity as to Stocker. The Court of Appeals reversed and remanded for trial. The court held that collateral estoppel and witness immunity did not preclude the action, and suggested there were genuine issues of material fact. We affirm in part and reverse in part.

We must decide whether judicial approval of the settlement estops Barr from advancing her claims, whether Stocker is protected from liability by witness or judicial immunity, and whether various issues pertaining to the fee arrangement may be resolved as matters of law. We hold (1) that Barr is not collaterally estopped from advancing her claims, (2) that Stocker is protected from liability as a matter of law by quasi-judicial immunity, and (3) that Day is entitled to compensation only in quantum meruit because he was effectively discharged by Mrs. Barr. Stamper also is entitled to compensation only in quantum meruit, unless there is a separate written contingency fee agreement between Mrs. Barr and Stamper that was not made part of the record before us.

## FACTS

In October of 1982, Lewis Barr fell and sustained a severe head injury while working on a Crowley Maritime tugboat. In December of 1982, Lewis hired Day to represent him in matters relating to the accident. Under the terms of the contract Lewis signed, Day was to receive one-third of "the amount received by the client" if the case went to trial, or between 25 and 30 percent of any settlement, depending on how near to trial the settlement was reached. Clerk's Papers (CP), at 19.

Two and one-half years later, Day filed suit on the Barrs' behalf against Crowley Maritime Corporation and Puget Sound Tug and Barge Company, as well as Reynold Power Transmission Corporation and Besco Corporation. On July 21, 1986, the Superior Court appointed Ella Barr as Lewis's guardian. On July 22, 1986, Ella discharged Day. Notwithstanding the discharge, on July 23, Day associated with Stamper as an additional attorney for the Barrs.

An agreement was eventually reached under which the Barrs would receive $313,333 in cash from Reynold, $183,333 in cash from Crowley, $3,000 from Besco, and an annuity guaranteed for 5 years and thereafter as long as Lewis Barr should live. Barr also received $180,935 under the admiralty law doctrine of "maintenance and cure" and $6,077 in pension and welfare trust advances in the period before a final settlement was reached.

The Barrs and Stamper discussed six different annuity payment plans. The Barrs ultimately selected an option under which they would receive increasing amounts each month, beginning at $2,180. The present value of the annuity, plus the amounts the Barrs had already received in maintenance and cure, and pension and welfare advances, plus the cash sums Crowley, Reynold, and Besco agreed to pay, equals $1,079,493.27. Deducting 30 percent from that total for attorney fees ($323,847.96) results in a net recovery of $755,645.42. Subtracting from that the amounts the Barrs had already received and the present value of the annuity would leave the Barrs with an immediate cash payment of $151,920.90.

Since Lewis was incompetent, and a guardianship had been established for him in Spokane County, the settlement had to be approved by the Spokane County Superior Court. Lewis and Ella Barr and attorneys Randall Stamper and Steven Stocker appeared before the court on June 17, 1987. Stamper described Lewis's accident and the terms of the settlement, including the attorney fee award, and asked the court to approve the settlement. He also asked that $100,000 of the cash distribution be paid to Ella, for her loss of consortium, and the balance (about $52,000) be paid into Lewis's guardianship account.

Stocker testified that he had been requested to examine the settlement as Lewis's court-appointed guardian ad litem. Stocker said he met with the Barrs and discussed the settlement proposal with them, and that both he and they thought the settlement and the attorney fee request fair.

Ella then testified that she reviewed the settlement with both Stamper and Stocker and that she approved of it. The court asked Ella if she discussed the fees charged by Stamper and Stocker. Ella responded, "Right". CP, at 57. The court then asked Ella if she and Lewis felt attorney fees were fair and reasonable. She said, "Um hm, I do". CP, at 59. Notwithstanding his status as incompetent, Lewis testified that he remembered signing the attorney fee agreement with Day and that he felt a 30 percent fee was acceptable. Lewis also said he discussed the entire settlement with Stamper "over and over" and that he "totally" agreed with it. CP, at 61-62. The court remarked that Stamper and Day had "done a very credible job. . . . And, the overall settlement . . . do[es] appear to be fair and reasonable". CP, at 62-63. The court then approved the settlement, "as well as the attorneys' fees and costs". CP, at 63.

Lewis died less than 2 years after the settlement of causes unrelated to his head injury. In 1990, Ella filed suit against Day, Stamper, and Stocker on behalf of herself and Lewis's estate, for which she is the personal representative. She alleged that Day and Stamper breached their contract with the Barrs by charging a fee in excess of that agreed upon,

and negligently valued the annuity, thereby breaching their fiduciary duties. She further alleged that Stocker negligently failed to protect Lewis's interests.

The parties moved for summary judgment. Stocker claimed that he was protected by the absolute immunity accorded witnesses. Both Day and Stamper argued that Barr was collaterally estopped from challenging the reasonableness of the attorney fee award and that she could not, in any event, prove a prima facie case of legal malpractice. The trial court granted all three Defendants' motions and dismissed Barr's complaint in its entirety. With respect to Stamper and Day, the complaint was dismissed solely on grounds of collateral estoppel. With respect to Stocker, the complaint was dismissed on grounds of witness immunity. The Court of Appeals reversed and remanded for trial. This court accepted review.

## Standard of Review

■ When reviewing an order granting summary judgment, the appellate court engages in the same inquiry as the trial court. *Syrovy v. Alpine Resources, Inc.*, 122 Wn.2d 544, 548 n.3, 859 P.2d 51 (1993). An appellate court will affirm summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). In summary judgment, all facts and reasonable inferences are to be considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo. *Caritas Servs., Inc. v. Department of Social & Health Servs.*, 123 Wn.2d 391, 402, 869 P.2d 28 (1994).

## Collateral Estoppel

Petitioners first contend that Barr cannot challenge the reasonableness of the attorney fees in this proceeding because the same fees were determined to be reasonable when the court in the guardianship proceeding approved the Barrs' tort settlement.

■ Collateral estoppel, also known as issue preclusion, "prevents relitigation of an issue after the party estopped

has had a full and fair opportunity to present its case". *Hanson v. Snohomish*, 121 Wn.2d 552, 561, 852 P.2d 295 (1993). *See also* Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 Wash. L. Rev. 805 (1985). For there to be collateral estoppel four requirements must be met:

> (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice.

(Footnote omitted.) *Hanson*, 121 Wn.2d at 561-62.

The Court of Appeals held that the second and third requirements were met. *Barr v. Day*, 69 Wn. App. 833, 841, 854 P.2d 642 (1993) (noting that the settlement hearing ended in a final judgment and that Mrs. Barr was a party to the earlier proceeding). Neither party challenges the Court of Appeals' assumption that the second element was met. Though that assumption appears incorrect, the issue is not properly before us.

The court addressed only the first and fourth elements, finding that the issues were not identical and that applying collateral estoppel would work an injustice by preventing Mrs. Barr from challenging the actions of her attorneys. *Barr*, 69 Wn. App. at 843-44.

■ We agree with the Court of Appeals' analysis. The issues presented in the two proceedings were not identical since the main issue in the settlement hearing was whether the proposed settlement as a whole, including attorney fees, was reasonable. Whether the attorneys made a full and fair disclosure to the Barrs on all matters relating to the fees, or whether any fiduciary duties were violated, are distinct issues. *See Barr*, 69 Wn. App. at 843. "[C]ollateral estoppel extends only to 'ultimate facts', *i.e.*, those facts directly at issue in the first controversy upon which the claim rests, and not to 'evidentiary facts' which are merely collateral to the original claim". *McDaniels v. Carlson*, 108 Wn.2d 299, 305, 738 P.2d 254 (1987).

■ As to the unfairness prong, we note a simple principle. Petitioners contend it is unjust to allow Barr to take diametrically opposed positions in two proceedings. First she urged the trial court to approve the settlement including attorney fees, they say, and now she seeks a judgment that the award was unreasonable, a breach of contract, and tortious. However, if she agreed to the settlement and urged its approval based on attorney misfeasance or nonfeasance, it is not unjust to permit her to rectify her error. Mrs. Barr, who has an eighth-grade education, simply trusted her lawyers that the attorney fees were reasonable and appropriate. It is hardly unjust to require her lawyers to justify that trust. We conclude that the doctrine of collateral estoppel does not prevent Barr from asserting her claims.

## Attorney Fees

We turn next to the issue of attorney fees. Since we decline to give the settlement hearing preclusive effect on the facts before us, we must independently review the propriety of the attorney fees awarded to Day and Stamper.

Lewis Barr hired Day in December 1982 after Barr received an offer of advance wage payments from Crowley Maritime Corporation. The contract provided for payment of a fee upon the occurrence of either of two contingencies:

a. If the matter proceeds to trial, 33-1/3% of the amount received.

b. If the matter is settled before commencement of trial, an amount between 25% and 30% of the amount received, depending on how near to trial settlement is made.

CP, at 483. There was never a trial and there was no completed settlement as of July 22, 1986, the date Mrs. Barr attempted to discharge Day.

Ella Barr was appointed guardian of her husband on July 21, 1986. The next day, she discharged Day "effective immediately". CP, at 694. She directed Day to prepare a statement detailing the services he had rendered so that arrangements could be made for payment. The record unambiguously discloses she intentionally terminated Day

because she was unhappy with the delay of over $3^1/_2$ years, and with the way he was handling the case.

Mrs. Barr left further decisions up to attorney Stamper. As she observed, "After all, I had my faith in Mr. Stamper. This is why I hired him. . . . I placed my trust in Randy [Stamper] to do whatever he felt was right". CP, at 650-51. Apparently, Stamper felt it was right to continue to involve Day even after he had been terminated. The record is somewhat unclear as to the reason for Day's continued involvement. However, what Mrs. Barr intended is quite clear:

Q: Do you know whether Mr. Stamper attempted to carry out your wishes to have Mr. Day terminated from the case?

A: [Mrs. Barr] Well, yes, he did carry out the, you know, the plan that where Mr. Day was eliminated from working with us any further, because that's what I wanted Mr. Stamper to do.

CP, at 640-41.

The mystery is why Day remained attorney of record, given Mrs. Barr's unambiguous termination. The answer to this mystery is troubling. In response to his dismissal, Day threatened to litigate whether he was entitled to continued compensation on the contingency fee contract rather than on the basis of quantum meruit. According to Stamper, rather than risk further delay, he entered into an association with Day. It is unclear how a collateral claim against Mrs. Barr by Day would have delayed the Barrs' case.

This episode is troubling for a number of reasons, not the least of which is that the fee agreement entered by Mr. Barr and Day clearly and explicitly provided for either withdrawal by the attorney or termination by the client at any time:

Attorney may withdraw from representation in this matter at any time after reasonable notice to Client, in which case Attorney shall receive a reasonable fee, measured by the time spent or result achieved, and shall be reimbursed for costs advanced as provided above.

Client *at any time* may discharge Attorney, but in such event Client shall pay to Attorney a reasonable fee, as defined above, for services performed to the date of discharge, together with costs advanced.

(Italics ours.) CP, at 483. Day was well aware of Mrs. Barr's termination of the attorney-client relationship, and of the souring of that relationship. As Day admitted, after Mrs. Barr directed Stamper to discharge Day, "The preparation and presentation of the settlement was in Mr. Stamper's hands. . . . I had no contact with the Barrs *nor would any have been welcome from me.*" (Italics ours.) CP, at 465.

■ Given the special nature of the attorney-client relationship, we find the image of a client unwillingly saddled with an attorney she neither wants nor needs highly disturbing. It is not clear from the record whether Mrs. Barr's letter terminating Day was actually mailed. This detail is not significant, however, since Day entertained no doubts whatever about Mrs. Barr's intent to discharge him. As Day's own brief to the Court of Appeals admits,

> In July 1986, Mrs. Barr decided to terminate the attorney/client relationship with Mr. Day. (CP 635-36.) It was the intent of Mrs. Barr to terminate Mr. Day's professional services and to eliminate Mr. Day's working for the Barrs. However, to resolve a fee split dispute, Mr. Day continued on as attorney of record for the Barrs, but it was the Barr's [*sic*] understanding that he was not going to do anything on the case from that point forward. . . .
>
> . . . .
>
> . . . In the present case, the client clearly expressed her loss of confidence and desire to terminate the confidential relationship with Attorney Day almost a year before the settlement.

Court of Appeals Br. of Resp'ts Day et al., at 5-6, 28. "[N]o special formality is required to discharge an attorney and any act of the client indicating an unmistakable purpose to sever relations is sufficient". *Belli v. Shaw*, 98 Wn.2d 569, 577, 657 P.2d 315 (1983) (citing *Thomas v. Thomas*, 178 Misc. 349, 34 N.Y.S.2d 320 (1942)). Given the clear contractual language granting the client the right to terminate at any time and given Mrs. Barr's unmistakable purpose to sever relations, we hold that Day was effectively discharged by Mrs. Barr on July 22, 1986.[1]

---

[1]As we discuss below, there simply was no colorable basis for the "fee split dispute". As of the date of discharge, Day had not come close to substantially performing either of the contingencies detailed in the December 1982 fee agreement with Lewis Barr.

■ ■ Moreover, the same result obtains even if the contract had not explicitly provided for the client's right to discharge the attorney at any time, and for attorney compensation based on a reasonable fee in the event of such discharge. It has long been the rule in this state that where the compensation of an attorney is to be paid contingently, and the attorney is discharged prior to the occurrence of the contingency, the measure of the fee is not the contingent fee agreed upon but reasonable compensation for the services actually rendered. *Ross v. Scannell*, 97 Wn.2d 598, 608-09, 647 P.2d 1004 (1982); *Ramey v. Graves*, 112 Wash. 88, 91, 191 P. 801 (1920). Unlike general contract law, under a contract between an attorney and a client, a client may discharge the attorney at any time with or without cause. *Kimball v. PUD 1*, 64 Wn.2d 252, 257, 391 P.2d 205 (1964). Special formalities are not required and any act of the client indicating an unmistakable purpose to sever relations is sufficient. *Belli*, 98 Wn.2d at 577. "Employment of other counsel, which is inconsistent with the continuance of the former relationship, shows an unmistakable purpose to sever the former relationship." *Belli*, 98 Wn.2d at 577 (citing *In re Estate of Schafer*, 39 Pa. Super. 384 (1909)). Not only did Mrs. Barr communicate to Day an unmistakable purpose to sever relations, she also employed Stamper to discharge Day.

Nor had Day substantially performed the contingency by the time at which Mrs. Barr indicated an unmistakable purpose to sever relations. *See Ross*, 97 Wn.2d at 609. The purpose of the substantial performance exception is to prevent clients from firing their attorneys immediately prior to the occurrence of the contingency in order to avoid the contingency fee. Day was discharged in July 1986. The settlement was not consummated until 11 months later. Indeed, Day did not participate in the last 11 months of the settlement process. See Court of Appeals Br. of Resp'ts Day et al., at 5-6; CP, at 245. Furthermore, in November 1986 Stamper and Day entered into a fee-splitting agreement. CP, 195. The division of fees purports to be proportionate to the services

330

provided by each lawyer. *See* RPC 1.5(e)(2). Under the terms of that agreement, after an initial deduction of a portion of the fees, Stamper would have been entitled to 49 percent of the remaining fees.[2] The measure of the fee accorded Stamper in that agreement is a measure of the extent to which the contingency had not been substantially performed by Day. Under the circumstances, he cannot possibly claim to have substantially performed the contingency as of the point at which Mrs. Barr discharged him.

We conclude that Mrs. Barr had both a contractual and a common law right to discharge Day. Since he was terminated prior to settlement, and the contract defined the contingency fee only in terms of the two alternatives of trial or settlement, we hold that Day is entitled to be paid only quantum meruit.[3] *See Kimball*, at 257.

■ We next consider the attorney fee claimed by Stamper. It is unclear under what contractual auspices Stamper believed he was operating. There are only two attorney-client contracts in the record. The first was between Lewis Barr and Day, and was terminated by Mrs. Barr in her capacity as Lewis's guardian. The second was between Ella

---

[2]A fee division of the kind represented here must have three elements. First, the agreement must be in proportion to the services provided by each lawyer. RPC 1.5(e)(2). Second, the division is ethical only if "the client is advised of and does not object to the participation of all the lawyers involved". RPC 1.5(e)(2). Third, the total fee must be reasonable. RPC 1.5(e)(2).

Mrs. Barr objected to the participation of Day, at least initially, since she had gone to the trouble of discharging him. Furthermore, her understanding was precisely that he had been "eliminated" from any further participation, although she left the details of that elimination up to Stamper. It is true she appears to have known of the association, and may therefore have acquiesced in Day's participation. One must bear in mind, however, that Day's continued "participation" was a formality apparently designed to guarantee him a share of any resulting contingency fee. Moreover, it is unclear whether Mrs. Barr acquiesced in Day's "participation" only in order to deflect Day's threat to litigate the fee question when she discharged him. Finally, though Mrs. Barr may have been "advised" of Day's "participation", she certainly objected to it.

[3]Quantum meruit is a Latin phrase meaning "as much as he deserves". The concept refers to the extent of liability on a contract implied by law, and is premised on the desirability of avoiding unjust enrichment. Thus, the law will imply a promise to pay a reasonable amount for labor and materials in the absence of an express promise to do so. Black's Law Dictionary 1119 (5th ed. 1979).

Barr and Day, and was likewise terminated. While Stamper may have assumed he was employed pursuant to the contingency fee agreements, both were terminated by Mrs. Barr and neither contingency fee agreement was ever properly reconstituted. The Rules of Professional Conduct require contingency fee agreements to be written. RPC 1.5(c). Attorney fee agreements which violate the Rules of Professional Conduct are against public policy and will not be enforced by the courts. *Belli v. Shaw*, 98 Wn.2d at 578. Because Stamper was not employed by Mrs. Barr under a valid written contingency fee agreement, he is entitled to compensation only on a quantum meruit basis, unless there was a written contingency agreement between Stamper and Mrs. Barr that was not made part of the record.

Our resolution of the attorney fees issue makes it unnecessary to decide whether the fee agreement was breached, whether the annuity was properly valued for purposes of determining the contingency fee, or whether the attorney fees pertaining to the maintenance and cure portions of the settlement were proper. We take this opportunity, however, to point out that contingency fees in structured settlements are now governed by RPC 1.5(c)(2). *See also* CR 26(b)(3).

## Guardian Immunity

This case also raises the question of the civil liability, if any, of a guardian ad litem in a settlement hearing. Petitioner Stocker contends that he is immune from any liability because his only role in the approval of the settlement was to testify at the settlement hearing as Lewis's guardian ad litem. While we agree Stocker is immune, we believe his immunity is better conceived as a branch of quasi-judicial immunity rather than witness immunity.

We decline to adopt the Court of Appeals' analysis based on *Collins ex rel. Collins v. Tabet*, 111 N.M. 391, 395, 806 P.2d 40 (1991). The New Mexico court held that guardians ad litem fulfill both a surrogate function and an advocate function, and remanded for a factual determination as to

which capacity the guardian was fulfilling in the particular case. We believe this analytic scheme is unwise and unworkable. Liability would potentially flicker on and off based on what a trier of fact might later determine regarding which function the guardian was performing. The resulting uncertainty would undoubtedly dampen the willingness of capable persons to serve as guardians ad litem.

In any case, even if one looks at Mr. Stocker's function, it is clear he was operating as an arm of the court, whatever the ambiguities of his appointment. Viewing guardians ad litem in settlement hearings solely as surrogates of the court is also consistent with governing statutory law. *See* RCW 11.88.045(1)(b); .090; RCW 11.92.060. We hold that guardians ad litem in guardianship proceedings involving court approval of settlements of civil claims of incompetents act as an arm of the court, and are therefore entitled to quasi-judicial immunity from civil liability.

CONCLUSION

We remand to the trial court for a determination of the reasonable value of the services rendered by Day, and for a determination of whether Stamper entered into a written contingency fee agreement with Mrs. Barr that has not been made part of the record before us. Absent such a contract, Stamper is entitled only to the reasonable value of his services.

ANDERSEN, C.J., and DOLLIVER, GUY, and MADSEN, JJ., concur.

UTTER, J. (concurring in concurrence/dissent) — Apart from the question whether the majority's discussion of attorney fees is or is not dicta, I agree with the concurrence/dissent that the majority should not have reached the issue of attorney fees at all. The majority claims that it "must" review the issue of attorney fees. Majority, at 326. The only two issues before us, however, are whether Mrs. Barr's claims are collaterally estopped and whether guardians ad

litem are immune from liability. See Day's Pet. for Review; Stamper and Stocker's Pet. for Review; Barr's Response to Pets. for Review. The majority's assertion that it was obligated to reach the issue of attorney fees is therefore unfounded.

In addition, we will generally decide a case only on the basis of issues set forth by the parties in their briefs unless we give parties the opportunity to present written argument on the issue raised by the court, RAP 12.1, or believe it would serve the ends of justice to waive the opportunity to be heard, RAP 1.2(c). Here, Mrs. Barr may have had a strategic reason for not alleging that Stamper and Day were entitled to be paid only quantum meruit and/or for only assigning error only to a limited portion of the trial court's disposition of the case. Also, Stamper and Day were deprived of an opportunity to respond to the issue which they could not know this court would consider. For the sake of fairness to all parties, I believe the court should not have reached the issue, and that if the court felt compelled to reach the issue, it should have provided the parties with an opportunity to comment. This would have ensured the opinion had the approval of at least one party, and that we had the opportunity to consider all pertinent aspects of the issue. As another court has noted, it is a "premise of our adversarial system . . . that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983).

I thus concur with the concurrence/dissent that the majority should not have resolved the issue of attorney fees.

JOHNSON, J. (concurring in part, dissenting in part) — The issues presented in this case involve the resolution of whether collateral estoppel bars the lawsuit over the legal fees and whether there is guardian ad litem immunity. I agree with the majority's disposition of those issues.

In dicta, the majority goes on to review, under "attorney fees", an issue not presented at the trial court, the Court of Appeals, or here. This discussion creates and resolves issues which are not argued, briefed, nor properly before us. I do not agree we should, on the limited summary judgment record before us, review the propriety of the attorney fees. The resolution of that issue properly should be addressed by the parties at trial on remand.

The majority's discussion is obiter dictum and, as such, is not helpful nor binding on the trial court.

BRACHTENBACH and SMITH, JJ., concur with JOHNSON, J.

Reconsideration denied November 2, 1994.