
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| JARED KARSTETTER and JULIE KARSTETTER, his spouse, who together form a marital community, | ) ) ) ) | No. 75671-1-I |
|  | ) | DIVISION ONE |
| Respondents, | ) ) |  |
|  | ) |  |
| v. | ) ) |  |
|  | ) |  |
| KING COUNTY CORRECTIONS GUILD, a nonprofit corporation doing business as a labor union, RANDY WEAVER, SONYA WEAVER, LEONARD ORTH, KATHERINE ORTH, GARRIN CLARK, GABRIEL VIGIL, | ) ) ) ) ) ) ) ) | PUBLISHED OPINION |
|  | ) |  |
| Petitioners, | ) ) |  |
|  | ) |  |
| WILLIAM ATCHISON, ANIL S. KARIA, TREVOR CALDWELL, individually and as representatives; and PUBLIC SAFETY LAW GROUP, a legal services public corporation, | ) ) ) ) ) ) |  |
|  | ) | FILED: December 26, 2017 |
| Defendants. | ) ) |  |

LEACH, J. — We granted discretionary review of the trial court's denial of King County Corrections Guild's (Guild) motion to dismiss Jared Karstetter's breach of contract and wrongful discharge claims. The trial court should have dismissed Karstetter's breach of contract claim because Washington public policy makes the contract termination provision unenforceable. And Karstetter's

wrongful discharge claim fails because he did not plead sufficient facts to support that claim. We reverse and remand to the trial court for dismissal of these two claims.

## FACTS

The Guild is a labor organization and the exclusive bargaining representative of corrections officers and sergeants employed by the King County Department of Adult and Juvenile Detention. Karstetter has served as legal counsel for the Guild since 1996. This case involves the parties' most recent contract, signed in 2011 by the Guild and the Law Offices of Jared C. Karstetter Jr. PS. Titled an employment agreement between the Guild and the law firm, it had a term of five years. The contract required that the Guild have just cause to terminate Karstetter and required notice, an opportunity to correct, and arbitration of any disputed termination.

In March 2016, the King County Ombudsman's Office (Ombudsman) contacted Karstetter about a whistleblower complaint. Karstetter claims the Guild vice-president told Karstetter to cooperate with the Ombudsman. Karstetter then complied by producing requested documents.

On April 27, 2016, the Guild summarily fired Karstetter. Karstetter alleges that the Guild fired him "ostensibly for disclosure of information to the

Ombudsman and for disloyalty." The Guild claims that it fired Karstetter because of strong evidence that he disclosed Guild client confidences.

Karstetter, along with his wife Julie Karstetter, who worked for the law firm as a legal assistant, sued the Guild and others, alleging several claims. The Guild moved to dismiss all claims against it: breach of contract, wrongful discharge, retaliation, negligent infliction of emotional distress, tortious interference with employment, and specific performance of contract. The trial court granted the Guild's motion in part, dismissing Karstetter's retaliation claim, tortious interference claim, and request for specific performance. The Guild requested discretionary review of the court's decision not to dismiss the breach of contract and wrongful discharge claims. We granted review under RAP 2.3(b)(2). This rule allows review if the trial court committed probable error that substantially alters the status quo or substantially limits the Guild's freedom to act.

## ANALYSIS

The Guild claims that the trial court should have dismissed Karstetter's breach of contract and wrongful termination claims against it. CR 12(b)(6) allows a court to dismiss a claim only when it appears beyond doubt that the claimant can prove no set of facts, consistent with its complaint, which would justify

recovery.[1] The court assumes the truth of all facts alleged in the complaint and may consider hypothetical facts supporting the claim.[2] A trial court should grant a CR 12(b)(6) motion "'sparingly and with care'" in the unusual case where the claimant's allegations show an insuperable bar to relief on the face of the complaint.[3] The trial court's CR 12(b)(6) decision presents a question of law, which this court reviews de novo.[4]

## Breach of Contract

The Guild contends that the trial court should have dismissed Karstetter's breach of contract claim because the contract's termination provision violates Washington public policy about client's ability to terminate an attorney-client relationship. Karstetter claims that this policy does not apply when the attorney is the client's employee. We agree with the Guild.

Specifically, the Guild asserts that the termination provision conflicts with the well-established rule that a client may fire a lawyer at any time and for any reason. Over many years, Washington courts have repeatedly recognized this

---

[1] Bravo v. Dolsen Cos., 125 Wn.2d 745, 750, 888 P.2d 147 (1995).

[2] FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014).

[3] Southwick v. Seattle Police Officer John Doe No. 1, 145 Wn. App. 292, 296, 186 P.3d 1089 (2008) (internal quotation marks omitted) (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998)).

[4] Tenore, 136 Wn.2d at 329-30.

rule and applied it in fee disputes between an attorney and a client.[5] Our Supreme Court has noted the unique nature of the attorney-client relationship and stated that the rule permitting a client to fire its attorney is necessary to protect both the client and the public.[6]

Washington's Rules of Professional Conduct reflect this policy. RPC 1.16(a) provides that a lawyer shall "withdraw from the representation of a client if . . . (3) the lawyer is discharged." Comment 4 to this rule states, "A client has the right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services." Neither the rule nor the comment excludes in-house counsel from the rule's application.

The contract's termination provision states,

---

[5] Belli v. Shaw, 98 Wn.2d 569, 577, 657 P.2d 315 (1983) ("Unlike general contract law, under a contract between an attorney and client, a client may discharge his attorney at any time with or without cause."); Kimball v. Pub. Util. Dist. No. 1 of Douglas County, 64 Wn.2d 252, 257, 391 P.2d 205 (1964) ("A client may, at any time, either for good or fancied cause, or out of whim or caprice, or wantonly and without cause whatever, discharge his attorney and terminate the attorney-client relationship."); Fetty v. Wenger, 110 Wn. App. 598, 600 n.4, 36 P.3d 1123 (2001) ("Clients have the right to discharge their attorney at any time, for any reason.").

[6] Barr v. Day, 124 Wn.2d 318, 328, 879 P.2d 912 (1994) ("Given the special nature of the attorney-client relationship, we find the image of a client unwillingly saddled with an attorney she neither wants nor needs highly disturbing."); Kimball, 64 Wn.2d at 257 ("This rule, though a harsh and stringent one against the attorney, exposing him frequently as it does to undeserved censure and criticism, is thought necessary for the protection of the client in particular and the public in general.").

Just Cause For Termination: It is understood by the parties that ATTORNEY is expected to perform in a manner consistent with the quality and expectations of the GUILD. It is further understood that ATTORNEY is primarily answerable to the President of the GUILD and secondarily answerable to the Executive Board of the GUILD. Consistent with the rights and expectations of the members that the GUILD represents ATTORNEY may be terminated for just cause. The definition of Just Cause shall be the same definition that is currently contained in the Collective Bargaining Agreement for GUILD members. In the event that the GUILD wishes to exercise this provision, due notice shall be provided to ATTORNEY and an opportunity to correct any behavior that GUILD deems inappropriate. ATTORNEY shall be afforded fundamental due process and an opportunity to answer to any and all charges. Termination of this Agreement shall be reserved as a final option. In the event that ATTORNEY disputes the findings and determination of the GUILD with regard to a Just Cause termination, ATTORNEY and GUILD agree to arbitrate said dispute in a manner consistent with the Arbitration Clause contained in the Collective Bargaining Agreement.

This provision directly conflicts with the rule that a client may fire a lawyer for any reason at any time. It also purports to modify Karstetter's ethical obligations by requiring cause for discharge and allowing him to dispute his discharge rather than withdrawing when discharged.

Karstetter does not dispute that the Guild is his client. Instead, he claims a contractual right to challenge and arbitrate his client's decision to fire him. This attempted modification of Karstetter's ethical obligations violates a long- and well-established public policy adopted by our Supreme Court to protect both clients and the general public. For these reasons, it is unenforceable.

We find support for our conclusion in LK Operating, LLC v. Collection Group, LLC.[7] In that case, the court observed, "The RPCs are clearly directed at promoting the public good and preventing public injury . . . . It is therefore possible, as a general matter, to find principles of public policy relevant to the enforceability of contracts in the RPCs."[8] It specifically found that a contract violating RPC 1.8(a)—limiting a lawyer's ability to enter into a business transaction with a client—presumptively also violated the public policy underlying the rule.[9] The court stated, "A contract entered in violation of former RPC 1.8(a) may still be enforced where it is shown, based on the specific factual circumstances that, notwithstanding the violation, the contract itself does not contravene the public policy underlying former RPC 1.8(a)."[10] The court added,

> We do not purport to set out any all-encompassing rule for how violation of any RPC in connection with a contract might affect that contract's enforceability. We simply reaffirm that a contract entered in violation of former RPC 1.8(a) may not be enforced unless it can be shown that notwithstanding the violation, the resulting contract does not violate the underlying public policy of the rule.[11]

Like the attorney in LK Operating, Karstetter cannot show that the challenged contract terms do not violate the policy behind the applicable RPC.

---

[7] 181 Wn.2d 48, 331 P.3d 1147 (2014).
[8] LK Operating, 181 Wn.2d at 86-87.
[9] LK Operating, 181 Wn.2d at 89.
[10] LK Operating, 181 Wn.2d at 89.
[11] LK Operating, 181 Wn.2d at 89-90. Any difference between the former and current version of RPC 18(a) is not significant or important to our decision.

Karstetter correctly notes that the procedural posture of this case differs from LK Operating. There, the court reviewed a summary judgment decision. Karstetter asserts that a dismissal based on the allegations in his complaint is inappropriate. He claims that if the contract violates the RPCs, some factual inquiry is still necessary to decide if the contract violates public policy. But Karstetter identifies no facts or hypothetical facts that would support a finding that the termination provision does not violate public policy. Unlike LK Operating, the trial court needed no more factual inquiry to determine that the termination provision violated public policy. No hypothetical set of facts could reconcile this provision with Washington's strong public policy of allowing a client great freedom in a decision to fire its attorney.

Karstetter asserts that his status as an employee of the Guild[12] distinguishes his case from Washington cases allowing a client to fire an attorney at any time and for any reason because courts decided those cases in the context of a typical attorney-client relationship.[13] He asserts that the principles of contract and employment law should take precedence over established Washington public policy and govern the parties' relationship.

---

[12] Karstetter's complaint alleged that he was an employee of the Guild. The Guild does not contest the adequacy of this allegation. We assume for purposes of this decision that Karstetter was an employee of the Guild.

[13] Barr, 124 Wn.2d at 328; Belli, 98 Wn.2d at 577; Kimball, 64 Wn.2d at 257.

Karstetter relies on Corey v. Pierce County.[14] There, a Pierce County deputy prosecutor made a promissory estoppel claim based on a representation that her employment contract contained a "just cause" provision.[15] But our Corey decision does not help Karstetter because we were not asked to consider and did not decide whether the alleged contract violated public policy.[16]

Karstetter also relies on Chism v. Tri-State Construction, Inc.[17] Karstetter cites Chism for the proposition that no inherent conflict of interest exists when an attorney negotiates with his employer about his compensation. Karstetter's claim does not turn on that issue. And Chism did not consider any contract provision limiting the client's right to sever the attorney-client relationship. Chism sought only earned bonuses, consistent with his compensation agreement, for services provided.[18] Here, Karstetter seeks lost future income for services that he will never provide. Chism provides no support for this claim.

---

[14] 154 Wn. App. 752, 225 P.3d 367 (2010).

[15] Corey, 154 Wn. App. at 757. Corey had no contract claim because the county received no consideration for the promise that she could be fired only for just cause. Corey, 154 Wn. App. at 768.

[16] Cont'l Mut. Sav. Bank v. Elliott, 166 Wash. 283, 300, 6 P.2d 638 (1932) ("An opinion is not authority for what is not mentioned therein and what does not appear to have been suggested to the court by which the opinion was rendered.").

[17] 193 Wn. App. 818, 374 P.3d 193, review denied, 186 Wn.2d 1013 (2016).

[18] Chism served as in-house counsel to Tri-State Construction. Chism, 193 Wn. App. at 825-26. He negotiated his own salary arrangement and bonuses. Chism, 193 Wn. App. at 825-34. After Chism resigned from his in-house position with Tri-State Construction, he sued to recover unpaid bonuses.

Finally, Karstetter relies on a California Supreme Court case, General Dynamics Corp. v. Superior Court of San Bernardino County.[19] In General Dynamics, the California Supreme Court held that an attorney employed as in-house counsel could bring a contract claim against a client-employer for breach of a "good cause" termination provision.[20] We do not find this decision helpful because the California Supreme Court has limited a client's unfettered right to discharge its attorney in a way that our Supreme Court has not.

In General Dynamics, the court limited a client's right to fire an attorney without liability for future damages to contingent fee personal injury cases.[21] The Washington Supreme Court has not similarly limited the client's termination rights. In Kimball v. Public Utilities District No. 1 of Douglas County,[22] our Supreme Court applied Washington's rule to a professional services contract between a law firm and a public utility for complex legal services related to a large hydroelectric dam project. The court held that the public utilities district could terminate the law firm at any time with or without cause and was liable for

---

Chism, 193 Wn. App. at 835. The jury awarded Chism $750,000 in unpaid earned bonuses. Chism, 193 Wn. App. at 836. The trial court, however, ordered Chism to disgorge a portion of the award because it found Chism had committed numerous RPC violations. Chism, 193 Wn. App. at 837. We reversed the trial court because we found no Supreme Court precedent for the order. Chism, 193 Wn. App. at 858-60.

[19] 7 Cal. 4th 1164, 876 P.2d 487, 32 Cal. Rptr. 2d 1 (1994).
[20] General Dynamics, 876 P.2d at 496.
[21] General Dynamics, 876 P.2d at 494-495.
[22] 64 Wn.2d 252, 391 P.2d 205 (1964).

the reasonable value of services provided up to the time of termination.[23] The court's use of Washington's rule in Kimball informs our decision here. Because we are obliged to follow the decisions of our Supreme Court, we decline Karstetter's invitation to follow General Dynamics.[24]

We note that Karstetter does not base his contract claim on an allegation that the Guild fired him for an illegal or improper reason. He makes that allegation in the context of his wrongful discharge claim only, which we address next.

## Wrongful Discharge Claim

The Guild asserts that the trial court should have dismissed Karstetter's wrongful discharge claim because Karstetter did not adequately plead it. We agree.

Other jurisdictions have split on whether an attorney-employee may bring a wrongful discharge claim against his client-employer.[25] We need not decide

---

[23] Kimball, 64 Wn.2d at 257.

[24] General Dynamics also held that in-house counsel may bring a retaliation claim against a client-employer. General Dynamics, 876 P.2d at 502-03. We do not intend this decision to comment on the merits of that issue.

[25] Compare General Dynamics, 876 P.2d at 502 (explaining the circumstances where in-house counsel may bring a retaliation claim) and Burkhart v. Semitool, Inc., 2000 MT 201, ¶ 41, 300 Mont. 480, 5 P.3d 1031 (relying on General Dynamics to hold that right to discharge an attorney without consequences did not apply to an attorney-client relationship where the attorney is an employee of the client) with Balla v. Gambro, Inc., 145 Ill. 2d 492, 584 N.E.2d 104, 110, 164 Ill. Dec. 892 (1991) (declining to extend the tort of retaliatory discharge to in-house counsel and holding that the rule that a client

this question here, however, because Karstetter failed to plead all elements of his wrongful discharge claim.

A wrongful discharge in violation of a public policy claim has four elements:

(1)   The plaintiffs must prove the existence of a clear public policy (the *clarity* element).

(2)   The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the *jeopardy* element).

(3)   The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the *causation* element).

(4)   The defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element).[26]

"To establish jeopardy, the plaintiff must show that he 'engaged in particular conduct, and the conduct directly relates to the public policy, or was necessary for the effective enforcement of the public policy.'"[27] He must also show "how the threat of discharge will discourage others from engaging in desirable conduct"

---

may discharge his attorney at any time, with or without cause, applies equally to in-house counsel as it does to outside counsel).

[26] Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 941, 913 P.2d 377 (1996) (citations omitted).

[27] Rose v. Anderson Hay & Grain Co., 184 Wn.2d 268, 290, 358 P.3d 1139 (2015) (quoting Gardner, 128 Wn.2d at 945).

and "that other means of promoting the public policy are inadequate."[28] Our

Supreme Court has noted the four areas where a clear public policy exists:

> (1) where the discharge was a result of refusing to commit an illegal act; (2) where the discharge resulted due to the employee performing a public duty or obligation; (3) where the termination resulted because the employee exercised a legal right or privilege; and (4) where the discharge was premised on employee "whistleblowing" activity.[29]

Karstetter relies on the fourth of these recognized public policies—

protection from discharge for "whistleblowing"—but does not adequately allege

that he was engaged in this protected activity. Whistleblowing occurs when an

employee reports employer misconduct in an attempt to remedy that

misconduct.[30] Karstetter's complaint states,

> On March 4, 2016, Mr. Karstetter was contacted by the King County Ombudsman's Office regarding a whistleblower complaint involving parking reimbursement to two Guild members. The Guild Vice President directed Mr. Karstetter to cooperate fully with the Ombudsman. Pursuant to the King County Code, Mr. Karstetter was compelled to produce certain documentation under threat of Superior Court action for compelled compliance.

In other words, Karstetter alleges that he provided information to the investigator

of a whistleblowing complaint but was not a whistleblower himself. Karstetter

does not show that he reported any misconduct to remedy that misconduct or

---

[28] Rose, 184 Wn.2d at 290.
[29] Dicomes v. State, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989) (citations omitted).
[30] Dicomes, 113 Wn.2d at 618-19.

that his actions were motivated by a desire to further the public good.[31] To the contrary, Karstetter alleges that he helped with the investigation because the King County Code and the threat of superior court action compelled him to. Thus, the whistleblower protection contemplated by Washington courts does not apply to Karstetter.

Because Karstetter's complaint fails to allege facts showing that he engaged in public-policy-linked conduct, the trial court should have dismissed the wrongful discharge claim.

## Attorney Fees

Karstetter requests attorney fees and costs under RAP 18.1 and RCW 49.48.030. RCW 49.48.030 permits a person to recover attorney fees if that person "is successful in recovering judgment for wages or salary owed to him or her." As Karstetter does not prevail in this appeal, we deny his request for attorney fees.

## CONCLUSION

Because the termination provision of the Guild contract is unenforceable and Karstetter did not plead all facts necessary to maintain his wrongful discharge claim, the trial court should have dismissed Karstetter's breach of

---

[31] See Rickman v. Premera Blue Cross, 184 Wn.2d 300, 313, 358 P.3d 1153 (2015).

contract and wrongful discharge claims.[32] We reverse, remand, and direct the trial court to dismiss those claims.

_Leach, J._

WE CONCUR:

_Cox, J_

_Becker, J_

---

[32] Because the record before us is sufficiently complete to permit a full decision on the merits of the issues presented, we deny Karstetter's motion to supplement the record.