IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 77729-7-I |
| | ) | |
| GEORGE CHIGI III, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| CAMILLE DICLERICO, | ) | |
| f/k/a CAMILLE CHIGI, | ) | FILED: July 29, 2019 |
| | ) | |
| Respondent. | ) | |

VERELLEN, J. — George Chigi and Camille DiClerico dissolved their marriage in 1999 and litigated a clarification of the spousal maintenance provision of the dissolution decree in 2009 and 2010. In 2017, Chigi moved to clarify that provision. Because Chigi seeks to relitigate the same issues he already litigated to final judgment in 2010, the court properly denied his motion under the doctrine of issue preclusion.

As an alternative to clarification, Chigi moved under CR 60(b)(11) to vacate the court's 2010 order. Motions to vacate must be brought within a reasonable time of a triggering event warranting vacation. Because Chigi fails to show he brought his motion within a reasonable time, the court did not abuse its discretion by denying his motion to vacate.

Therefore, we affirm.

## FACTS

Chigi and DiClerico married in 1969.[1] Chigi served in the Army in Vietnam from 1967 to 1968 and again in 1970.[2] He retired from military service in 1991.[3] Chigi petitioned for dissolution of his marriage in 1998.[4] The court granted a decree of dissolution in 1999.[5]

In the decree, the court awarded Chigi 100 percent of his Veteran's Administration (VA) disability benefits and his military retirement.[6] It awarded DiClerico spousal maintenance in two phases. During phase 1, which lasted until Chigi turned 65, he would pay DiClerico $2,000 per month.[7] During phase 2, which lasts until DiClerico's death, Chigi must pay a monthly amount "equal to one-half (1/2) of the net amount of [Chigi's] current combined VA disability and military retirement as maintenance, which . . . shall be non-modifiable."[8] Neither party appealed the decree.

In May of 2008, Chigi turned 65, and the parties entered phase 2 of the maintenance decree.[9] In July of 2009, DiClerico moved to hold Chigi in contempt

---

[1] Clerk's Papers (CP) at 5.
[2] CP at 255.
[3] CP at 245.
[4] CP at 6.
[5] CP at 23.
[6] CP at 16.
[7] CP at 20.
[8] Id.
[9] CP at 248.



because of underpaid maintenance.[10] Chigi argued the underpayments were inadvertent and resulted from contemporaneous changes to his VA disability and military retirement benefits and from beginning to receive combat-related special compensation (CRSC) benefits.[11] The court ordered Chigi to repay DiClerico, and it scheduled a hearing to consider the reasons for apparent reductions in Chigi's benefit payments, including his receipt of CRSC.[12] In March of 2010, the court ordered Chigi to "pay [DiClerico] one half of the funds received without offset for taxes from his CRSC & VA disability and military retirement payments each month."[13] Chigi did not appeal or seek to revise this order.

Through mid-2017, Chigi paid DiClerico a monthly amount equal to one-half the sum of his VA disability and military retirement benefits, including his CRSC benefits.[14] In August of 2017, Chigi moved to clarify or vacate the 2010 order.[15] The court denied his motion to clarify, concluding it was barred as res judicata, and it denied his motion to vacate as untimely.[16]

Chigi appeals.

---

[10] CP at 40-41.
[11] CP at 55.
[12] CP at 385.
[13] CP at 216.
[14] See CP at 296-98 (spreadsheets of monthly payments).
[15] CP at 230, 240.
[16] CP 371-72.

ANALYSIS

We review de novo the conclusion that a matter was precluded as res judicata.[17] Res judicata "is designed to 'prevent relitigation of already determined causes and curtail multiplicity of actions.'"[18] Unfortunately, "'[r]es judicata' is not a precise term," and it sometimes encompasses the distinct doctrines of claim preclusion and issue preclusion.[19] Because the crux of the parties' dispute here focuses on a single issue rather than a multiplicity of issues within a larger claim, the most natural interpretation of the court's ruling is that issue preclusion barred Chigi's motion.

Issue preclusion, also called collateral estoppel, "'prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case.'"[20] As the party asserting the doctrine, DiClerico must prove:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to . . . the earlier

---

[17] Weaver v. City of Everett, 4 Wn. App. 2d 303, 313, 421 P.3d 1013, review granted, 192 Wn.2d 1001, 430 P.3d 251 (2018); see Niemann v. Vaughn Comty. Church, 154 Wn.2d 365, 374, 113 P.3d 463 (2005) ("[T]he question of whether equitable relief is appropriate is a question of law.").

[18] Loveridge v. Fred Meyer, Inc., 125 Wn.2d 759, 763, 887 P.2d 898 (1995) (quoting Bordeaux v. Ingersoll Rand Co., 71 Wn.2d 392, 395, 429 P.2d 207 (1967)).

[19] Kelly-Hansen v. Kelly-Hansen, 87 Wn. App. 320, 327, 941 P.2d 1108 (1997).

[20] Weaver, 4 Wn. App. 2d at 314 (emphasis omitted) (internal quotation marks omitted) (quoting Barr v. Day, 124 Wn.2d 318, 324-25, 879 P.2d 912 (1994)).

proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.[21]

First, both the 2010 and 2017 proceedings involve the same issue: whether Chigi's CRSC benefit amounts should be included when calculating spousal maintenance under the terms of the 1999 dissolution decree. And both arguments rely on the premise that CRSC is neither a VA disability benefit nor a military retirement benefit as contemplated by the spousal maintenance agreement. In 2010, Chigi argued that DiClerico's maintenance payments should equal one-half of Chigi's military retirement and VA disability benefits, excluding CRSC benefits.[22] In 2017, he argued that DiClerico's maintenance payments should equal "one-half of VA disability and military retirement," excluding CRSC benefits.[23] Chigi made the same evidentiary argument in both 2009 and 2017, contending CRSC benefits had no effect on his VA disability and military retirement benefits.[24] In both 2010 and 2017, the court could examine Chigi's VA disability and military retirement benefit payments before and after the start of his CRSC benefits. The only

---

[21] In re Marriage of Pennamen, 135 Wn. App. 790, 805, 146 P.3d 466 (2006) (alteration in original) (quoting Christensen v. Grant County Hosp., 152 Wn.2d 299, 307, 96 P.3d 957 (2004)).

[22] CP at 144-45.

[23] CP at 234-35.

[24] Compare CP at 54 (arguing in 2009, "[M]y CRSC pay does not in any way reduce my VA [d]isability or military retirement pay.") (boldface omitted), with CP at 252 (arguing in 2017, "[T]he CRSC does not decrease my military retired pay at all, as the combined amount of my VA disability and retired pay is generally the same (but for [c]ost of [l]iving [a]djustments that happen every year that cause minor increases) before and after I started receiving CRSC.") (boldface omitted).

difference was that the 2010 court had months of records to examine and the 2017 court had years of records. Chigi raised the same issue in 2017 already resolved in 2010.

Second, Chigi appears to argue the 2010 order was not a final judgment on the merits.[25] He argues, as a general matter, "the principles of res judicata and collateral estoppel do not apply to maintenance that has been ordered by the court."[26] But this misunderstands the nature of a motion to clarify a spousal maintenance decree. When a court clarifies a dissolution decree, it issues a declaratory judgment.[27] A declaratory judgment is an appealable final judgment.[28] Chigi contends that when calculating spousal maintenance, the language of the decree does not support adding the amount of CRSC benefits he receives.[29] But the court concluded otherwise in 2010.[30] Chigi did not appeal that ruling. The 2010 clarification order was a final judgment.[31]

---

[25] See Appellant's Br. at 25; Reply Br. at 13 (arguing res judicata "do[es] not apply to maintenance that has been ordered by the court").

[26] Reply Br. at 13.

[27] See Byrne v. Ackerlund, 108 Wn.2d 445, 453, 739 P.2d 1138 (1987) (a dissolution decree "may be subject to a declaratory action to ascertain the rights and duties of the parties").

[28] Lakewood Racquet Club, Inc. v. Jensen, 156 Wn. App. 215, 223, 232 P.3d 1147 (2010); RCW 7.24.010 (declaratory judgments "shall have the force and effect of a final judgment or decree").

[29] Appellant's Br. at 22-23.

[30] CP at 216.

[31] Chigi cites to In re Marriage of Cook, 28 Wn. App. 518, 521, 624 P.2d 743 (1981), and In re Marriage of Roorda, 25 Wn. App. 849, 853, 611 P.2d 794 (1980), to argue maintenance decrees are always modifiable. But this argument

Third, there is no dispute that Chigi and DiClerico are the same parties in both proceedings.

Fourth, Chigi will suffer no injustice. Precluding a party from litigating an issue works an injustice where that party would be deprived of the opportunity to fully and fairly litigate it.[32] Chigi fully briefed and argued this precise issue before the court in 2009 and 2010.[33] Although Chigi argues additional evidence would now benefit his argument,[34] the presence of additional evidence does not distinguish the legal issue before the court in 2009 and 2010 from the issue presented in 2017.

---

overstates the significance of both cases. In both Cook and Roorda, the parties seeking modification of child support decrees were statutorily authorized to do so. Cook, 28 Wn. App. at 520-21 ("The statutory provision allowing for modification of a divorce decree represents a departure from the common law res judicata rule.") (citing Roorda, 25 Wn. App. at 843); Roorda, 25 Wn. App. at 852-53 (citing RCW 26.09.260 to explain statutes allow departure from the common law rules on finality). Here, Chigi states he "is not asking to modify" and is seeking only clarification. Reply Br. at 13. Neither the modification statutes nor related case law are applicable.

[32] Weaver, 4 Wn. App. 2d at 316 (quoting Barr v. Day, 124 Wn.2d 318, 324-25, 879 P.2d 912 (1994)).

[33] RP (Sept. 8, 2009) at 6-7, 11-12 (both parties arguing about the effect of CRSC benefits on Chigi's maintenance payments to DiClerico); RP (Mar. 19, 2010) at 22-46 (arguing the tax implications of Chigi's receipt of CRSC benefits); CP at 139-47 (Chigi's 2010 trial brief arguing why CRSC amounts do not and should not affect maintenance payments).

[34] See RP (Nov. 2, 2017) at 52 (arguing "that over probably the last 18 years, VA disability and military retirement [benefits] were not impacted because [Chigi] started receiving [CRSC]. [And] we couldn't show that before because the change had just happened.").

7

In 2009 and 2010, Chigi enjoyed a full and fair opportunity to litigate the significance of his CRSC benefits, and the court issued a final declaratory judgment on the matter. He did not appeal. Issue preclusion now applies. The court properly estopped him from relitigating this issue.

In the alternative, Chigi moved to vacate the 2010 order under CR 60(b)(11). The court denied his motion as "barred by res judicata" and "[e]ven if res judicata did not apply, laches would apply as it has been more than [seven] years since the court's ruling on this issue."[35]

Although the court was correct that res judicata in the form of issue preclusion estopped Chigi's motion to clarify, CR 60 provides a mechanism to reopen a final judgment.[36] Whether an equitable doctrine, such as laches, applies is a question of law we review de novo.[37]

A party asserting laches must show (1) inexcusable delay by the movant and (2) prejudice to the nonmovant resulting from the delay.[38] Courts may not "presume prejudice merely from the fact of a delay."[39] As the party asserting

---

[35] CP at 371-72.

[36] In re Marriage of Shoemaker, 128 Wn.2d 116, 120, 904 P.2d 1150 (1995).

[37] Niemann, 154 Wn.2d at 374.

[38] Auto. United Trades Org. v. State, 175 Wn.2d 537, 542, 286 P.3d 377 (2012) (quoting State ex rel. Citizens Against Tolls v. Murphy, 151 Wn.2d 226, 241, 88 P.3d 375 (2004)). Laches previously had a third element requiring proof of the movant's knowledge or of a reasonable opportunity for the movant to have discovered his cause of action. Id. at 542 n.3 (quoting Buell, 80 Wn.2d at 522).

[39] Clark County Pub. Util. Dist. No. 1 v. Wilkinson, 139 Wn.2d 840, 849, 991 P.2d 1161 (2000).

laches, DiClerico must "show whether and to what extent" she has been prejudiced by the delay itself.[40] DiClerico does not address how the seven-year delay prejudiced her.[41] Because DiClerico fails to meet her burden, the court erred by concluding laches applied.

This error is immaterial, however, because CR 60(b) contains its own time requirements, and Chigi failed to meet them. The parties reasonably understood the court's ruling as also concluding Chigi's motion to vacate was untimely.[42]

We review a decision to grant or deny a CR 60 motion for abuse of discretion.[43] A CR 60(b)(11) motion must be brought "within a reasonable time," but if the party seeking relief "is a minor or a person of unsound mind, the motion shall be made within 1 year after the disability ceases."[44] Chigi contends we should find a seven year delay reasonable "[i]n light of the deathly illnesses he has

---

[40] Id. at 849.

[41] See Resp't's Br. at 33.

[42] See Appellant's Br. at 25; Resp't's Br. at 31. During the court's oral ruling on laches, it explained, "[S]even years would not be a reasonable time under CR 60. And I can't see any exception under CR 60." RP (Nov. 2, 2017) at 62.

[43] Shoemaker, 128 Wn.2d at 120-21.

[44] CR 60(b). Chigi argues he moved within a reasonable time because "CR 60 itself allows a greater time period of review for a person suffering from a disability." Appellant's Br. at 25. But Chigi cites no authority for the proposition that the word "disability" in CR 60(b) means all legally cognizable disabilities. The rule uses "disability" only as a synonym for the two conditions listed in the sentence: being a minor or being a "person of unsound mind."

faced since 2010."[45] Chigi explained to the trial court he was depressed, suicidal, diagnosed with cancer, and suffered other medical maladies after 2010.[46]

Chigi does not explain why these unfortunate medical conditions wholly prevented him from filing his motion to vacate before 2017. Chigi's evidence of suicidal ideation, which is not from a medical expert, documents resultant incapacitation for only four weeks in 2009.[47] The sole evidence from a medical expert does not state that any of Chigi's symptoms rose to the level of an "unsound mind" that prevented him from directing his attorney to file a motion to vacate.[48] Nothing in the record indicates the trial court abused its discretion by finding he did not have a disability as contemplated in CR 60(b). Indeed, Chigi described himself in July of 2010 as exercising regularly, including swimming several days each week, and biking on those days he did not swim.[49] And in 2015, Chigi stated, "All in all, I am well," despite symptoms from his chronic stomach problems, anemia, and heart troubles.[50] Chigi's own descriptions of his physical and mental condition do not establish he was completely unable to file a motion to vacate within a reasonable time of entry of the 2010 clarification order.

---

[45] Appellant's Br. at 28.

[46] CP at 253.

[47] CP at 303.

[48] CP at 300.

[49] CP at 329.

[50] CP at 325.

Chigi also contends he filed his motion to vacate within a reasonable time because of a change in the law. CR 60(b)(11) is a "catch-all provision intended to serve the ends of justice in extreme, unexpected situations . . . when no other subsection of CR 60(b) applies."[51] The extraordinary circumstances must be extraneous to the proceeding, such as when an appellate court decision changes the law on which the judgment rests.[52] A court should not measure the reasonableness of time passed based only on the lapse between judgment and filing.[53] Rather, the relevant measure of time is between a "triggering event for the motion" and the filing of the CR 60(b)(11) motion itself.[54]

Chigi argues his 2017 motion to vacate was timely because Howell v. Howell, which the United States Supreme Court decided in 2017, changed the law underlying the 2010 order.[55] Howell held that state courts may not distribute or divide military service-related disability benefits in a dissolution decree.[56] But this decision did not change the law relevant to the court's 2010 order.

Neither the 1999 dissolution decree nor the 2010 order actually distributed or divided Chigi's CRSC benefits or VA disability benefits.[57] The dissolution

---

[51] Shandola v. Henry, 198 Wn. App. 889, 895, 396 P.3d 395 (2017).

[52] Id. at 895-96.

[53] In re Marriage of Thurston, 92 Wn. App. 494, 500, 963 P.2d 947 (1998).

[54] Id.

[55] ___ U.S. ___, 137 S. Ct. 1400, 197 L. Ed. 2d 781 (2017).

[56] Id. at 1405.

[57] CP at 16, 216.

11

decree awarded those benefits solely to Chigi.[58] And the spousal maintenance agreement, as clarified by the 2010 order, requires that Chigi use the amount of his total CRSC benefits, VA disability, and military retirement benefits to calculate his maintenance payments to DiClerico.[59] Which monies he uses to pay that amount is entirely his decision. Howell is not apt.[60]

Even if the dissolution decree or 2010 order distributed Chigi's disability benefits, Howell still would not constitute a change in the law. In 1989, the Supreme Court held in Mansell v. Mansell that state courts lacked the authority to divide monies received from tax-exempt military disability benefits.[61] This was the law when the trial court entered its 2010 order clarifying Chigi's dissolution decree. If the 1999 dissolution decree or the 2010 order divided Chigi's service-related disability benefits, then an appeal would have been warranted at those times. But Chigi did not appeal either the dissolution decree or the 2010 order. Because Howell did not constitute a relevant change in the law and Chigi fails to

---

[58] CP at 16.

[59] See CP at 20 (calculating maintenance payments based on "an amount equal to" half of Chigi's VA disability and military retirement payments); see also Appellant's Br. at 33 ("The parties' [dissolution decree] simply used the combined amount of VA disability and military retired pay Mr. Chigi received each month as a formula to determine what maintenance Mr. Chigi would pay upon turning 65.").

[60] Indeed, the Supreme Court explained that a maintenance scheme like that here is acceptable under the law. See Howell, 137 S. Ct. at 1406 (noting that a family court "remains free to take account of the contingency that some military retirement pay might be waived, or . . . take account of reductions in value when it calculates or recalculates the need for spousal support").

[61] 490 U.S. 581, 594-95, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989).

demonstrate a disability as contemplated by CR 60, he does not show the court abused its discretion by concluding seven years was not a reasonable delay.

Chigi contends the court erred by awarding DiClerico $2,500 in attorney fees.[62] We review an award of attorney fees for abuse of discretion.[63] He argues the court abused its discretion by making its fee award without any findings of fact or statutory citations.[64] His argument is contradicted by the record because the court's written and oral orders provided a reasoned basis for the award.[65] Moreover, Chigi does not challenge the basis of the court's fee award. He fails to show the court abused its discretion by awarding attorney fees.

DiClerico seeks attorney fees on appeal.[66] A party may be entitled to fees on appeal where authorized by applicable law.[67] DiClerico contends she is entitled to fees because RCW 26.18.160 authorizes them.[68]

RCW 26.18.160 allows an award of costs and attorney fees to the prevailing party "[i]n any action to enforce a support or maintenance order." Chigi brought the instant action in 2017 to "request[ ] that the Decree be enforced per its

---

[62] CP at 372.

[63] Matter of Marriage of Crosetto, 82 Wn. App. 545, 563, 918 P.2d 954 (1996).

[64] Appellant's Br. at 36.

[65] CP at 372; RP (Nov. 2, 2017) at 66-68.

[66] Resp't's Br. at 41.

[67] RAP 18.1(a).

[68] Resp't's Br. at 42-43.

actual terms."[69]  Because DiClerico is the prevailing party in an enforcement action, she is entitled to fees upon compliance with RAP 18.1.

For the foregoing reasons, we affirm.

WE CONCUR:

---

[69] CP at 230.